**WABASH VALLEY POWER ASSOCIATION, INC.,**
Plaintiff,

v.

**RURAL ELECTRIFICATION ADMINISTRATION,**
Defendant,

**Indiana Utility Regulatory Commission, Indiana Office of Utility Consumer Counselor, State of Michigan, and Michigan Public Service Commission, Intervenors.**

No. IP 89–126–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

May 16, 1989.

---

**3.** For similar relief *see North Carolina v. Pearce,* 395 U.S. 711, 714, 89 S.Ct. 2072, 2074, 23 L.Ed. 2d 656 (1969).

David H. Kleiman, Indianapolis, Ind., Lee A. Freeman, Jr., John F. Kinney, Chicago, Ill., Don F. Morton, Indianapolis, Ind., for Wabash Valley Power Ass'n.

John R. Bolton, Asst. Atty. Gen., J. Christopher Kohn, James G. Bruen, George Kielman, Andrea Larry, Civil Div., Dept. of Justice, Michael W. Kelly, Frank Clover, Office of General Counsel, Dept. of Agriculture, Washington, D.C., Deborah J. Daniels, U.S. Atty., Jeffrey L. Hunter, Asst. U.S. Atty., Indianapolis, Ind., for Rural Electrification Admin.

Linley E. Pearson, Atty. Gen. of Indiana, Brenda Franklin Rodeheffer, Deputy Atty. Gen., Robert K. Johnson, Robert M. Glennon, Office of Utility Consumer Counselor, Indianapolis, Ind., for Indiana Utility Consumer Counselor.

Don L. Keskey, Patricia S. Barone, State of Mich., Michigan Public Service Com'n, Lansing, Mich., for State of Mich., Michigan Public Service Com'n.

Sorelle J. Ancel, Indianapolis, Ind., Albert Ernst, Lansing, Mich., John Coldren, Portland, Ind., for amicus curiae Wabash Valley Power Ass'n Official Members Committee.

Warren D. Krebs, Indianapolis, Ind., for amicus curiae Hendricks County REMC.

Leo J. Clifford, Valparaiso, Ind., for amicus curiae Kankakee Valley REMC.

### ENTRY

DILLIN, District Judge.

This cause is before the Court on a motion by defendant, Rural Electrification Administration, to dismiss plaintiff's complaint for lack of subject matter jurisdiction and a motion by plaintiff, Wabash Valley Power Association, Inc., joined by intervenors Indiana Utility Regulatory Commission, Indiana Office of Utility Consumer Counselor, State of Michigan, and Michigan Public Service Commission, for summary judgment. For the following reasons, defendant's motion to dismiss is denied, and plaintiff's motion for summary judgment is granted.

### Background

This case basically involves a dispute between a borrower, Wabash Valley Power Association, Inc. ("Wabash"), and a federal lender, the Rural Electrification Administration ("REA"). Wabash is an Indiana not-for-profit electricity generation and transmission cooperative which provides electric service at wholesale to its 24 members. From 1978 through 1984, Wabash borrowed several hundred million dollars, approximately $480 million of which was used to finance Wabash's 17% interest in a nuclear generator at Marble Hill, to be constructed by Public Service Company of Indiana. REA guaranteed these loans, securing them with mortgages on virtually all of Wabash's assets, including power supply contracts with Wabash's members.

In January 1984, Public Service Company abandoned the nuclear project at Marble Hill. In April 1984, at the behest of REA, Wabash sought approval of a 51% rate increase from the Indiana Public Service Commission (now the Utility Regulatory Commission), primarily to pay for its Marble Hill debts. Wabash's rates in Indiana are regulated by the Utility Regulatory Commission; its rates in Michigan are under the jurisdiction of the Michigan Public Service Commission. REA intervened in the rate proceedings before the Indiana Commission and "argued vigorously." *National Rural Util. Coop. Fin. Corp. v. Public Serv. Comm'n*, 528 N.E.2d 95, 99 (Ind.Ct.App.1988).

In May 1985, Wabash filed for Chapter 11 bankruptcy, and the Indiana rate proceedings were temporarily stayed. *See id.* at 97–98. While much has occurred in the bankruptcy court, *see, e.g., In re Wabash Valley Power Ass'n*, 77 B.R. 991 (S.D.Ind. 1987), a reorganization plan has not yet been approved. Meanwhile, on January 28, 1987, the Indiana Utility Regulatory Commission dismissed Wabash's petition for a rate increase because the Indiana Supreme Court had ruled that Indiana does not permit an investor-owned utility to increase rates to pay for a facility that is not "used and useful."

REA appealed the Commission's ruling to the Indiana Court of Appeals, which, in September 1988, affirmed the dismissal of Wabash's petition for a 51% rate increase. *National Rural Utilities*, 528 N.E.2d at

95. A few weeks later, REA informed Wabash, the Indiana Utility Regulatory Commission, and the Michigan Public Service Commission by letter that

> based upon the failure of the Indiana Commission and the Indiana courts to permit Wabash to charge rates sufficient to pay the Marble Hill debt, ... the REA hereby exercises jurisdiction over the rates charged by Wabash. Thus, the Indiana Commission and the Michigan Commission are no longer entitled to serve as regulatory authorities whose approval must be obtained for changes in Wabash's rates.

REA additionally ordered Wabash to raise its rates "9% across the board" as soon as the bankruptcy court lifted the automatic stay, dismissed the bankruptcy proceeding, or confirmed a reorganization plan.

On February 3, 1989, Wabash filed this action seeking a declaratory judgment that REA lacks the authority to usurp state ratemaking authority by letter and unilaterally regulate Wabash's wholesale rates. The Court granted motions of the Indiana Utility Regulatory Commission, the Indiana Office of Utility Consumer Counselor, the State of Michigan, and the Michigan Public Service Commission to intervene and join Wabash in seeking a declaratory judgment against REA. In addition, the Court has permitted the Wabash Valley Official Members Committee, Hendricks County REMC, and Kankakee Valley REMC to appear as amici curiae and file briefs in this case.

REA has moved to dismiss Wabash's complaint, contending the Court lacks subject matter jurisdiction, while Wabash, joined by the intervenors, has moved for a summary declaratory judgment.

### Discussion

#### REA's Motion to Dismiss

Defendant, REA, argues this Court lacks subject matter jurisdiction of this cause of action because the United States has not waived its sovereign immunity and because exclusive jurisdiction of this case rests, if at all, in the United States Claims Court.

■ Regarding the Claims Court, 28 U.S.C. §§ 1346(a)(2) and 1491 provide that the Claims Court has exclusive jurisdiction of contract claims against the United States seeking monetary damages in excess of $10,000.00. In this case, however, neither plaintiff nor any of the intervenors is seeking any monetary damages at all. Therefore, the Court finds that the Claims Court does not have exclusive jurisdiction of this case.

■ Regarding sovereign immunity, REA argues that regardless of how Wabash has framed its complaint, what Wabash is really seeking is a declaratory judgment that REA has breached its mortgage contracts with Wabash. REA further contends that the only statute that waives the government's sovereign immunity on contract claims, the Tucker Act, 28 U.S.C. §§ 1346(a)(2), 1491, does not permit such declaratory relief. As defendant notes, the Tucker Act provides for a limited waiver of sovereign immunity in contract cases, but only where a plaintiff is seeking monetary damages, not declaratory or injunctive relief. *See Lee v. Thornton*, 420 U.S. 139, 95 S.Ct. 853, 43 L.Ed.2d 85 (1975) (per curiam); *Richardson v. Morris*, 409 U.S. 464, 93 S.Ct. 629, 34 L.Ed.2d 647 (1973) (per curiam).

Some courts have construed the Tucker Act's preclusion of equitable relief to mean that federal district courts in general have no jurisdiction to provide any declaratory or injunctive relief against the government in a suit on a contract. *See Sharp v. Weinberger*, 798 F.2d 1521, 1524 (D.C.Cir. 1986); *North Side Lumber Co. v. Block*, 753 F.2d 1482, 1485–86 (9th Cir.) *cert. denied*, 474 U.S. 919, 931, 106 S.Ct. 248, 265, 88 L.Ed.2d 256, 271 (1985); *Serra v. United States Gen. Servs. Admin.*, 667 F.Supp. 1042, 1049–51 (S.D.N.Y.1987), *aff'd*, 847 F.2d 1045 (2d Cir.1988). *But see Lehner v. United States*, 685 F.2d 1187, 1190 (9th Cir.1982), *cert. denied*, 460 U.S. 1039, 103 S.Ct. 1431, 75 L.Ed.2d 790 (1983) (APA provides jurisdiction for district court to award equitable relief on a contract claim). However, the courts that found no district court jurisdiction to provide equitable relief

on a contract claim also pointed out that a district court nevertheless has jurisdiction to award declaratory or injunctive relief where a plaintiff's complaint also contains noncontract claims or alleges statutory or constitutional violations. *See Sharp,* 798 F.2d at 1524; *North Side Lumber,* 753 F.2d at 1486; *Serra,* 667 F.Supp. at 1052–57.

In this case, plaintiff Wabash seeks a declaratory judgment that defendant REA lacks statutory authority to assert jurisdiction to regulate Wabash's rates and to preempt the rate-setting authority of the Indiana and Michigan utility regulatory commissions. Contrary to REA's assertion that this is in essence a contract claim, the Court finds that plaintiff's complaint is not a suit on a contract against the federal government. That REA has allegedly breached its mortgage contracts with Wabash in attempting to usurp state rate-setting authority is merely one of Wabash's arguments in support of its claim. In addition, the intervenors in this case—the Indiana Utility Regulatory Commission, the Indiana Utility Consumer Counselor, the State of Michigan, and the Michigan Public Service Commission—which join Wabash in seeking a declaratory judgment against REA, do not have a contractual relationship with the government nor do they assert contract claims. Consequently, the Court finds that the Tucker Act's preclusion of declaratory relief on a contract claim against the government does not apply to the present case. Moreover, even if parts of plaintiff's complaint were construed as a contract claim, the Court clearly has jurisdiction of the noncontract, statutory claims raised by Wabash. *See Sharp,* 798 F.2d at 1524; *North Side Lumber,* 753 F.2d at 1486.

■ In addition to the limited waiver of sovereign immunity in the Tucker Act, the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.,* broadly waives the government's sovereign immunity in suits seeking only equitable relief. *See Bowen v. Massachusetts,* 487 U.S. ——, ——, ——, 108 S.Ct. 2722, 2731, 2735, 101 L.Ed.2d 749,

762, 767 (1988); *Sharp,* 798 F.2d at 1523. This statute provides in pertinent part:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial relief thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity ... shall not be dismissed nor relief therein be denied on the ground that it is against the United States....

5 U.S.C. § 702. This is precisely the allegation in the case at hand. Wabash and the intervenors seek declaratory relief, asserting they have been adversely affected or aggrieved by official action of the REA in contravention of its statutory authority.

■ REA does not dispute that in its November 23, 1988, letters to Wabash, the Indiana Utility Regulatory Commission, and the Michigan Public Service Commission, it asserted jurisdiction over Wabash's rates. Such " 'abstract assertion of jurisdiction by an agency is not ordinarily a basis for judicial review.' " *Chicago Truck Drivers, Helpers & Warehouse Workers Union (Independent) v. National Mediation Board,* 670 F.2d 665, 668 (7th Cir. 1981) (quoting *California Or. Power Co. v. Federal Power Comm'n,* 239 F.2d 426, 430 (D.C.Cir.1956)). However, such action can amount to final agency action reviewable by a court pursuant to the APA where the agency's declaration affects a plaintiff's day-to-day business, and withholding court consideration would work a hardship on the parties. *Id.*

In this case, REA's letter leaves Wabash not knowing which agency—REA or the state regulatory commission—in fact is in charge of Wabash's rates. In addition, in February 1989, REA ordered Wabash to withdraw a proposal for a rate increase from the Indiana Utility Regulatory Commission because the Commission is "no longer entitled to serve as the regulatory authority whose approval must be obtained for changes in Wabash's rates." A regu-

lated entity like Wabash can hardly conduct business if it is not sure who controls its proposed rate increases. Accordingly, the Court finds that plaintiff has satisfied the criteria for judicial review of federal agency action pursuant to the APA and that the Court has subject matter jurisdiction of this cause of action pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 1331 (general federal question). Defendant's motion to dismiss is therefore denied.

*Wabash's Motion for Summary Judgment*

Summary judgment, pursuant to Rule 56, F.R.Civ.P., is proper only when there is no genuine issue of material fact. *Big O Tire Dealers, Inc. v. Big O Warehouse,* 741 F.2d 160, 163 (7th Cir.1984). REA asserts that factual disputes preclude summary judgment in this case. However, only disputes over material facts—facts that affect the outcome of the suit—preclude summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986). "[T]he mere existence of factual issues—where those issues are not material to the claims before the court—will not suffice to defeat a motion for summary judgment." *Quarles v. General Motors Corp.,* 758 F.2d 839, 840 (2d Cir.1985). In this case, the Court finds the factual issues raised by REA are not material, the material facts are not in dispute, and therefore summary judgment is appropriate.

■ REA also argues that its assertion of authority to set Wabash's rates is not judicially reviewable because its "action is committed to agency discretion by law," quoting 5 U.S.C. § 701. The Court finds no merit in this argument. This APA exception to judicial review of agency action is very narrow and applies only in rare instances. *Associated Elec. Coop., Inc. v. Morton,* 507 F.2d 1167, 1176–77 (D.C.Cir. 1974), *cert. denied,* 423 U.S. 830, 96 S.Ct. 49, 46 L.Ed.2d 47 (1975). While it is true that some courts have found that REA has unreviewable discretion to decide whether to make a loan, how much to loan, and to whom, *see Alabama Power Co. v. Alabama Elec. Coop., Inc.,* 394 F.2d 672, 674–75 (5th Cir.), *cert. denied,* 393 U.S. 1000, 89 S.Ct. 488, 21 L.Ed.2d 465 (1968); *Rural Electrification Admin. v. Central La. Elec. Co.,* 354 F.2d 859, 865–66 (5th Cir.), *cert. denied,* 385 U.S. 815, 87 S.Ct. 34, 17 L.Ed.2d 54 (1966), nowhere does the Rural Electrification Act vest in the Administrator unbridled discretion to dictate a borrower's wholesale rates. As the district court in *GTE International, Inc. v. Hunter,* 649 F.Supp. 139 (D.P.R.1986), noted when REA made a similar argument, this narrow exception to judicial review will not be applied to REA administrative action other than loanmaking. *Id.* at 143–44. Therefore, this Court finds that the REA action challenged here is judicially reviewable.

In assessing REA's actions in this case, the Court will apply the standard for judicial review set out in the APA, 5 U.S.C. § 706. Accordingly, the issue before the Court is whether REA's usurpation by letter of the authority of the Indiana and Michigan state utility commissions and REA's assertion of jurisdiction to dictate Wabash's wholesale rates is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; or in excess of statutory jurisdiction, authority, or limitations, or short of statutory right...." 5 U.S.C. § 706(2)(A)–(C).

The Supreme Court recently and thoroughly addressed the issue of federal versus state regulatory authority over rural electric cooperatives in *Arkansas Electric Cooperative Corp. v. Arkansas Public Service Commission,* 461 U.S. 375, 103 S.Ct. 1905, 76 L.Ed.2d 1 (1983). The Arkansas Electric Cooperative Corp., invoking the Supremacy Clause and the Commerce Clause, challenged a state's authority to regulate the wholesale rates of an entity like Wabash—a nonprofit rural electric cooperative financed in large part by REA loans. The Supreme Court noted that for investor-owned utilities, the Federal Power Commission ("FPC") (now the Federal Energy Regulatory Commission ("FERC")) regulates wholesale rates, and the states regulate retail rates. *Id.* at 377–80, 103 S.Ct. at 1909–10, 76 L.Ed.2d at 6–8. In

contrast, while the retail rates of nonprofit rural electric companies are regulated by the states, wholesale rates had not been subject to pervasive state or federal regulation. *Id.* at 381–82, 103 S.Ct. at 1911, 76 L.Ed.2d at 9.

The Court, analyzing both the Federal Power Act, 16 U.S.C. §§ 791a *et seq.,* and the Rural Electrification Act, 7 U.S.C. §§ 901 *et seq.,* held that a state could regulate the wholesale rates of a rural nonprofit electric cooperative and that a state utility commission's assertion of jurisdiction over such rates was not preempted by federal law. *Arkansas,* 461 U.S. at 396, 103 S.Ct. at 1918, 76 L.Ed.2d at 18. In particular, the Supreme Court declared, "Nothing in the Rural Electrification Act expressly pre-empts state rate regulation of power cooperatives financed by the REA[,]" and noted, "[T]he REA is a lending agency rather than a classic public utility regulatory body...." *Id.* at 385–86, 103 S.Ct. at 1913, 76 L.Ed.2d at 11.

■ Despite this Supreme Court analysis, REA contends it has plenary, albeit latent federal ratemaking jurisdiction over the wholesale rates of a co-op like Wabash, citing snippets of legislative history of the Rural Electrification Act and a 1967 Federal Power Commission ruling, *Dairyland Power Cooperative,* 37 F.P.C. 12 (1967), holding that rural electric cooperatives are not within the jurisdiction of the FPC.

In *Arkansas,* however, the Supreme Court examined the same legislative history and concluded, "[T]he legislative history of the Rural Electrification Act makes abundantly clear that, although the REA was expected to play a role in assisting the fledgling rural power cooperatives in setting their rate structures, it would do so within the constraints of state regulatory schemes." 461 U.S. at 386, 103 S.Ct. at 1913, 76 L.Ed.2d at 12. This Court finds that "assisting ... within the constraints of state regulatory schemes" is not at all equivalent to having the broad federal ratemaking jurisdiction REA contends it has.

Furthermore, whatever the FPC had to say in *Dairyland* dicta about REA ratemaking authority has been implicitly but clearly superseded by a controlling Supreme Court decision on this issue, *Arkansas,* 461 U.S. at 375, 103 S.Ct. at 1905, 76 L.Ed.2d at 1. In light of the Supreme Court analysis in *Arkansas,* this Court finds as a general matter that REA does not have wholesale ratemaking jurisdiction over rural electric cooperatives regulated by state utility commissions.

■ REA further contends that in the specific circumstances of this case, Indiana (and Michigan) state regulation of Wabash's rates is impliedly preempted. In *Arkansas,* the Supreme Court discussed the circumstances under which state utility commission rate regulation of a rural electric coop might be preempted. The Court explained that a state commission "can make no regulation affecting rural power cooperatives which conflicts with particular regulations promulgated by the REA," and stated:

There may come a time when the REA changes its present policy, and announces that state rate regulation of rural power cooperatives is inconsistent with federal policy. If that were to happen, and if such a rule was valid under the Rural Electrification Act, it would of course pre-empt any further exercise of jurisdiction by the [state] PSC.

*Id.* at 388–89, 103 S.Ct. at 1915, 76 L.Ed.2d at 13.

REA claims it has such a rule, quoting from REA Bulletin 111–4 (March 20, 1972):

Power supply borrowers are responsible for charging wholesale rates which will produce the revenues needed to meet lenders' requirements, satisfy their mortgage provisions, and maintain a satisfactory equity position.

The Court finds no merit in this argument. This "rule" existed when the Supreme Court decided *Arkansas,* and the Supreme Court did not find that the document reflected an established REA policy to displace state regulation. The Court quoted another sentence from the same Bulletin— "Borrowers must, of course, submit proposed rate changes to any regulatory commissions having jurisdiction and must seek

approval in the manner prescribed by those commissions"—and declared, "Since Bulletin 111–4 was issued subsequent to the FPC's decision in Dairyland, the 'regulatory commissions having jurisdiction' to which it refers can only be state regulatory agencies...." *Arkansas,* 461 U.S. at 387–88, 103 S.Ct. at 1914, 76 L.Ed.2d at 12–13. This Court finds that the REA Bulletin does not constitute an REA rule preempting state ratemaking, and agrees with the Supreme Court that the Bulletin instead evidences REA deference to state authority to regulate wholesale rates. *See id.*

Finally, REA seizes upon one sentence from the Supreme Court opinion in *Arkansas* and declares that the sort of implicit preemption described therein is what occurred in the case at hand. The Court said:

> Moreover, even without an explicit statement from the REA, a particular rate set by [a state] PSC may so seriously compromise important federal interests, including the ability of the [rural cooperative] to repay its loans, as to be implicitly pre-empted by the Rural Electrification Act.

*Id.* at 389, 103 S.Ct. at 1915, 76 L.Ed.2d at 13. REA argues that because the Indiana Utility Regulatory Commission and Indiana Court of Appeals decisions denying Wabash a 51% rate increase fail to accommodate the federal interest in REA loan repayment, these decisions are impliedly preempted.

■ This Court, however, may not assess whether these Indiana decisions adequately protect REA's interest in repayment of its loans because of the doctrine of res judicata. "The Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts ... to give state judicial proceedings 'the same full faith and credit ... as they have by law or usage in the courts of such State ... from which they are taken.'" *Parsons Steel, Inc. v. First Alabama Bank,* 474 U.S. 518, 519, 106 S.Ct. 768, 769–70, 88 L.Ed.2d 877, 880–81 (1986); *see also Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262, 270 (1982). In this case, the Indiana Utility Regulatory Commission denied Wabash's request for a 51% rate increase to pay debts Wabash "incurred through its participation in Marble Hill," primarily REA-guaranteed loans. *National Rural Util. Coop. Fin. Corp. v. Public Svce Comm'n,* 528 N.E.2d 95, 98 (Ind.Ct.App.1988). REA, an intervenor, "argued vigorously" before the Commission. *Id.* at 99. REA then appealed the Commission's decision to the Indiana Court of Appeals, which affirmed the Commission's ruling on September 12, 1988. *Id.* at 95. The Full Faith and Credit Act requires this Court to give the Court of Appeals decision whatever res judicata effect an Indiana court would accord it.

REA asserts this state decision is not res judicata in this court because it did not have a full-blown hearing before the Commission and because a ratemaking order of the Indiana Utility Regulatory Commission, as an essentially legislative act, may not have res judicata effect. With respect to REA's due process argument, the Supreme Court in *Kremer* declared that "state proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause in order to qualify for the full faith and credit guaranteed by federal law," and explained that the critical factor is whether a party had an opportunity for a hearing. 456 U.S. at 481–85, 102 S.Ct. at 1897–99, 72 L.Ed.2d at 280–82. Reviewing the Indiana statutory provisions for proceedings before the Commission and for judicial review of a Commission ruling, Ind.Code §§ 8–1–1–5 to 8–1–13–39, including the provision that a reviewing court may order additional evidence taken before the Commission, *id.* § 8–1–3–7, this Court finds these state procedures afford adequate opportunity for a hearing and satisfy the requirements of the Due Process Clause.

With respect to REA's contention that a rate decision is legislative and cannot have res judicata effect, it overlooks the point that the Court's focus is not on the Commission's order, but on the decision of the Indiana Court of Appeals. As the Supreme Court indicated in *Kremer,* the Full Faith and Credit Act applies to state court decisions on judicial review of state agency

rulings even where a state agency decision alone might not have preclusive effect. 456 U.S. at 469–70, 102 S.Ct. at 1891, 72 L.Ed.2d at 272–73; *see also Mitchell v. Bendix Corp.*, 603 F.Supp. 920, 921–22 (N.D.Ind.1985); *cf. Unger v. Consolidated Foods Corp.*, 693 F.2d 703, 705–06 (7th Cir.1982), *cert. denied*, 460 U.S. 1102, 103 S.Ct. 1801, 76 L.Ed.2d 366 (1983). The one exception to according full faith and credit to a state court decision is where the federal statute at issue expressly or impliedly repeals the Full Faith and Credit Act. *Kremer*, 456 U.S. at 468, 102 S.Ct. at 1890, 72 L.Ed.2d at 271. Because this Court finds in the Rural Electrification Act no express or implied repeal of the Full Faith and Credit Act, we are bound to apply the Indiana law of res judicata in determining the preclusive effect of the Indiana Court of Appeals decision on the issue of whether the denial of Wabash's rate increase adequately protected federal interests.

Indiana law requires four elements for the doctrine of res judicata to apply:

(1) the former judgment must have been rendered by a court of competent jurisdiction;

(2) the former judgment must have been rendered on the merits;

(3) the matter now in issue was, or might have been determined in the former suit; and

(4) the controversy adjudicated in the former action must have been between the parties to the present action or their privies.

*Chemco Transport, Inc. v. Conn*, 506 N.E.2d 1111, 1113 (Ind.Ct.App.1987). In this case, the Indiana Court of Appeals clearly had jurisdiction to review the ruling of the Utility Regulatory Commission, its judgment was on the merits, and the parties to the appeal are also the key parties in this case—REA, Wabash, and the Indiana Utility Regulatory Commission.

Thus, the only question is whether the matter of protection of the federal interest in loan repayment "was or might have been determined" by the Indiana Court of Appeals. Under this claim preclusion aspect of res judicata, "what specifically was de-

cided by the [first] court is beside the point. The question is not what *was* decided, but what *could have been* decided.... once [a] judgment upon the merits [is] entered ..., a judgment between the same parties regarding the same subject matter [is] foreclosed." *Jones v. American Family Mut. Ins. Co.*, 489 N.E.2d 160, 166 (Ind.Ct.App. 1986) (emphasis original).

In deciding REA's appeal of the Indiana commission's denial of Wabash's rate increase, the Indiana Court of Appeals stated:

The REA cites *Arkansas Elec. Coop. v. Arkansas Pub. Serv. Comm.* (1983), 461 U.S. 375, 389, 103 S.Ct. 1905, 1915, 76 L.Ed.2d 1 [1983] for the proposition that a rate set by a state regulatory commission may so seriously compromise the ability of a wholesale cooperative to repay its federal loan as to be implicitly repealed by the Rural Electrification Act. While there is language in that opinion to that effect, the REA admits that the question of preemption is not actually before this court. This court may only address the issues which are actually placed before it for consideration. Appellate Rules 8.3(A)(3) and 8.3(A)(7).

*National Rural Utilities*, 528 N.E.2d at 104. The Indiana Appellate Rules to which the court referred basically state that to raise an issue on appeal, the appellant (here REA) must include in its brief a statement of the issue and its contentions, legal reasoning, and analysis regarding that issue.

This Court concludes that the Indiana Court of Appeals did not address the issue of implied federal preemption of the state rate decision because the issue was not adequately raised or briefed. Because we find that the Indiana Court of Appeals otherwise could have determined the issue of federal preemption, all four Indiana elements of res judicata are satisfied. Consequently, this Court is precluded from readjudicating the issue of whether Indiana's denial of Wabash's request for a 51% rate increase so compromised federal interests in loan repayment as to be impliedly preempted.

It appears that REA, having sought a Wabash rate increase from the Indiana Commission, appealed the Commission's ruling, and lost, has now decided to accomplish by administrative fiat what it could not in the Indiana courts, invoking a sentence from the Supreme Court opinion in *Arkansas.* However, stating, as the Court did in *Arkansas,* that a particular state rate decision may be preempted is a far cry from saying a federal agency dissatisfied with a state decision may, by letter, usurp state regulation and create for itself authority it does not otherwise have. REA has pointed to nothing in the Rural Electrification Act that gives it this authority. Moreover, as the Supreme Court noted, Congress designed REA to be a lending agency, not a federal regulatory body. *Arkansas,* 461 U.S. at 386, 103 S.Ct. at 1913, 76 L.Ed.2d at 11.

█ To permit REA to negate by letter decisions of the Indiana Utility Regulatory Commission and the Indiana Court of Appeals (and presumably the Indiana Supreme Court, if REA is displeased with its decision also) would render the state rate-making authority proclaimed by the Supreme Court in *Arkansas* hollow indeed. The Indiana commission might as well just ask REA what rate to set for Wabash if REA, asserting implied preemption, can effectively overturn a state decision and usurp state authority in so arbitrary a fashion. This Court finds particularly apt the comment of another federal district court also faced with heavyhanded REA administrative action by letter: "The true horror ... is ... allowing the agency unbridled discretion to reverse [state decisions] without judicial review to check arbitrary acts of this so-called fourth branch of Government." *GTE Int'l, Inc. v. Hunter,* 649 F.Supp. 139, 148 (D.P.R.1986).

The Court holds therefore that if REA believes that a state utility commission rate decision cannot stand because it violates federal interests, REA must challenge that decision through established state appeals procedures. For example, in *Northwest Central Pipeline Corp. v. State Corporation Commission,* 489 U.S. ——, 109 S.Ct. 1262, 103 L.Ed.2d 509 (1989), appellant challenged the Kansas utility commission's regulation of natural gas production as preempted by the federal Natural Gas Act. Appellant raised the preemption issue before the state commission and appealed the commission's ruling to a state court, the state supreme court, and ultimately to the United States Supreme Court. *Id.* at ——, 109 S.Ct. at 1272–73, 103 L.Ed.2d at 525–26. Similarly, in *Mississippi Power & Light Co. v. Mississippi ex rel. Moore,* 487 U.S. ——, 108 S.Ct. 2428, 101 L.Ed.2d 322 (1988), *Nantahala Power & Light Co. v. Thornburg,* 476 U.S. 953, 106 S.Ct. 2349, 90 L.Ed.2d 943 (1986), and *Arkansas,* 461 U.S. at 375, 103 S.Ct. at 1905, 76 L.Ed.2d at 1, parties asserting that state utility commission regulation conflicted with federal laws or interests all raised their preemption challenges on state court judicial review of commission orders and appealed the issue through the state court system to the United States Supreme Court.

Indiana law clearly provides for a similar challenge and appeals procedure. According to the Indiana Supreme Court, a court reviewing a ruling of the state utility commission may properly consider "whether or not the order is contrary to law. Is the order or finding the result of considering or failing to consider some factor or element which it is apparent improperly influenced the result or final determination?" *Public Svce Comm'n v. City of Indianapolis,* 235 Ind. 70, 131 N.E.2d 308, 312–13 (1956); *see also Citizens Action Coalition of Ind., Inc. v. Northern Ind. Public Svce Co.,* 485 N.E.2d 610, 612 (Ind.1985), *cert. denied,* 476 U.S. 1137, 106 S.Ct. 2239, 90 L.Ed.2d 687 (1986). First, however, the appellant must comply with the rules in order to raise the issue. In this case, REA failed to do so.

In view of the foregoing analysis, this Court need not address in detail Wabash's arguments based on the mortgage contracts between it and REA or its power supply contracts with its members. Essentially, Wabash contends that REA's attempt to usurp state rate-making authority and dictate Wabash's rates contravenes the

following language in its 1980 mortgage contract:

Section 15. The Mortgagor, [Wabash] subject to applicable laws and rules and orders of regulatory bodies, will design its rates for electric energy....

Wabash also quotes a portion of its power supply contracts with its members, contending REA agreed to the following phrasing in contracts that REA demanded as security for its loans:

4. *RATE.* Subject to the approval of the Public Service Commission of Indiana:

(a) the Members shall pay WVPA for all electric power and energy furnished hereunder at rates and on the terms and conditions set forth in the applicable rate schedule;

(b) ... The Member agrees that the rate, from time to time, established by the Board of Directors of WVPA shall be deemed to be substituted for the rate herein provided and agrees to pay for electric power and energy furnished by WVPA to it hereunder after the effective date of any such revision at such revised rates; provided, however, that no such revision shall be effective unless approved by applicable regulatory authorities and the Administrator.

REA asserts that these contract provisions are ambiguous because the phrases "regulatory bodies" and "regulatory authorities" do not clearly refer only to state commissions, but also could mean REA. The Court finds this argument preposterous. REA is *not* a utility regulatory body; it is a lending agency. *Arkansas,* 461 U.S. at 386, 103 S.Ct. at 1913, 76 L.Ed. 2d at 11. In addition, the Supreme Court declared in *Arkansas* that after 1967 (the date of the FPC's decision in *Dairyland*), any reference in an REA document to a "regulatory commission" could only mean a state regulatory agency. *Id.* at 388, 103 S.Ct. at 1914, 76 L.Ed.2d at 12–13. Finally, this Court finds the reference in paragraph 4(b) of the power supply contracts to "applicable regulatory authorities" also can only refer to state authorities for if, as REA contends, the "applicable regulatory

authority" is REA itself, the phrase would be redundant, requiring approval by "REA and the REA Administrator." Accordingly, the Court finds the mortgage contract and power supply contracts expressly condition rate increases on approval of the applicable *state* regulatory commissions.

To summarize, the Court finds that as a general matter, REA does not have wholesale ratemaking jurisdiction over rural electric cooperatives regulated by state utility commissions. As the Supreme Court stated in *Arkansas,* a particular state commission rate decision may so seriously compromise federal interests in the ability of a rural cooperative to repay its loans as to be impliedly preempted by the Rural Electrification Act. 461 U.S. at 389, 103 S.Ct. at 1915, 76 L.Ed.2d at 13. However, this Court is precluded from considering whether the January 1987 Indiana Utility Regulatory Commission ruling denying Wabash a rate increase fails adequately to protect federal interests and is therefore impliedly preempted because of the res judicata effect of the Indiana Court of Appeals decision affirming the Commission's order. Nothing in the Rural Electrification Act gives REA the power unilaterally to make a determination of implied preemption and, by administrative fiat, usurp state ratemaking authority and dictate a rural electric cooperative's wholesale rates. We hold instead that if REA believes a state rate decision is impliedly preempted, REA must challenge the decision through established state appeals procedures.

For these reasons, Wabash's motion for summary judgment must be granted. A declaratory judgment will issue that the action of the Rural Electrification Administration in, by letter, asserting ratemaking jurisdiction over Wabash Valley Power Association, Inc., usurping the ratemaking authority of the Indiana Utility Regulatory Commission and the Michigan Public Service Commission, and undertaking to dictate Wabash's wholesale rates is arbitrary, capricious, not in accordance with law, and of no force and effect whatever.

## JUDGMENT

The Court having this day filed its entry in the above captioned matter in the following words and figures: (H.I.), now therefore in accordance therewith,

IT IS CONSIDERED, ADJUDGED AND DECREED that the action of the United States Rural Electrification Administration in, by letter, asserting ratemaking jurisdiction over Wabash Valley Power Association, Inc., usurping the ratemaking authority of the Indiana Utility Regulatory Commission and the Michigan Public Service Commission, and purporting unilaterally to set Wabash Valley Power Association's wholesale rates is arbitrary, capricious, and not in accordance with law. It is hereby set aside as beyond the authority of the defendant.