685 F.2d 1187
 Luisa LEHNER, Plaintiff-Appellant,
v.
UNITED STATES of America, Samuel Riley Pierce,*
Secretary of the Department of Housing and Urban
Development, House of Affirmation, Inc.,
a corporation, Defendants-Appellees.
 No. 80-4326.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 16, 1981.
Decided Sept. 3, 1982.
 
 Alan J. Cilman, San Francisco, Cal., for plaintiff-appellant.
 Kimberly A. Reiley, Asst. U. S. Atty., San Francisco, Cal., Edmund L. Regalia, Oakland, Cal., for defendants-appellees; John G. Sprankling, Miller, Starr & Regalia, Oakland, Cal., on brief.
 Appeal from the United States District Court for the Northern District of California.
 Before MERRILL, Senior Circuit Judge, and CHOY and WALLACE, Circuit Judges.
 CHOY, Circuit Judge:
 
 
 1
 The district court dismissed Luisa Lehner's numerous claims against the United States and the Secretary of Housing and Urban Development, and her single claim against the House of Affirmation, Inc. We affirm the dismissal of some of her claims for lack of jurisdiction and the remainder for failure to state claims upon which relief can be granted.
 
 I. Facts
 
 2
 Lehner asserts that governmental misconduct resulted in the foreclosure and resale of realty located in California and owned by Coastside Convalescent Hospital, a limited partnership in which she was the sole general partner and to which she is the successor-in-interest. She alleges the following facts.
 
 
 3
 In early 1971, the Federal Housing Administration (FHA) guaranteed a loan from Bankers Mortgage Company of California to Coastside to renovate the hospital. Coastside executed a deed of trust to Bankers Mortgage as security for the loan and authorized the FHA to periodically inspect construction.
 
 
 4
 In early 1972, the construction contractor ran out of money. Fred Soviero, the FHA employee assigned to the project, told Lehner that if she executed a notice stating that the project had been substantially completed, the contractor could procure the money needed from funds held in escrow pending completion. Relying on assurances from Soviero that the FHA would see to the project's completion, Lehner executed the notice. The contractor, claiming no further obligation to work, abandoned the unfinished project. As a result, Coastside did not realize the income expected from the reopening of the hospital.
 
 
 5
 When Coastside failed to make loan payments as they fell due, the FHA fulfilled its duty as guarantor and paid Bankers Mortgage the balance. In return, Bankers Mortgage conveyed its interest in the realty to the FHA. Throughout the next three years, Lehner made repeated attempts, by herself and through an attorney, to negotiate a settlement with the FHA and its parent organization, the Department of Housing and Urban Development (HUD). Several oral agreements were made but not reduced to writing. HUD failed to honor the informal settlements.
 
 
 6
 In September 1976, HUD held a foreclosure sale at which the House of Affirmation purchased the property for an amount well below its alleged market value of $500,000.[1] Lehner had known that the sale was imminent. In fact, her attorney had requested that HUD delay it on two occasions; the second request coming just a few days prior to the sale. Also, on the very day that the House of Affirmation contracted to buy the property, Lehner brought suit in federal district court to secure a temporary restraining order against the sale.
 
 II. Jurisdiction
 
 7
 The doctrine of sovereign immunity foreclosed the district court from entertaining all of Lehner's tort claims as well as the monetary prayer in her contract claims against the United States. As the Supreme Court has explained: "The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of consent to be sued in any court defines the court's jurisdiction to entertain the suit." United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941) (citations omitted).[2] The claims fail to clear this jurisdictional hurdle because Lehner failed to satisfy the conditions imposed by the United States on its waiver of immunity.
 
 
 8
 The Federal Tort Claims Act, 28 U.S.C. §§ 2671-80, waives federal sovereign immunity from tort claims brought in federal district court. House v. Mine Safety Appliances Co., 573 F.2d 609, 613 (9th Cir.), cert. denied, 439 U.S. 862, 599 S.Ct. 182, 58 L.Ed.2d 171 (1978); Caidin v. United States, 564 F.2d 284, 286 (9th Cir. 1977). A condition limiting the waiver is that "the claimant shall have first presented the claim to the appropriate Federal agency." 28 U.S.C. § 2675(a). The claim must be in the form of some "written notification of an incident, accompanied by a claim for money damages in a sum certain." 28 C.F.R. § 14.2(a) (1980). See House v. Mine Safety Appliances Co., 573 F.2d at 615; Caton v. United States, 495 F.2d 635, 637-38 (9th Cir. 1974); Avril v. United States, 461 F.2d 1090, 1091 (9th Cir. 1972). When the claimant sues in district court, it cannot seek "any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim." 28 U.S.C. § 2675(b). Lehner failed to follow the prescribed procedures. She never filed a written claim or requested a monetary settlement with the FHA or HUD. Her informal discussions with agency officials certainly do not supply an adequate basis for bringing tort claims for $500,000 in district court.
 
 
 9
 Similarly, while the United States has waived immunity from contract claims, a claim seeking an amount in excess of $10,000 must be presented to the Court of Claims. 28 U.S.C. §§ 1346(a)(2), 1491. See Rowe v. United States, 633 F.2d 799, 800-01 (9th Cir. 1980), cert. denied, 451 U.S. 970, 101 S.Ct. 2047, 68 L.Ed.2d 349 (1981). The district court therefore lacks jurisdiction to award Lehner the $500,000 sought to compensate her for the FHA's alleged breach of contract.
 
 
 10
 This leaves three types of claims that clear the jurisdictional hurdle. First, Lehner alleges that HUD violated her right to due process by taking the property without adequate notice. The court had jurisdiction at least over her prayer for equitable relief. See Glines v. Wade, 586 F.2d 675, 681 (9th Cir. 1978), rev'd on other grounds sub nom. Brown v. Glines, 440 U.S. 957, 99 S.Ct. 1496, 59 L.Ed.2d 769 (1980). It is uncertain whether jurisdiction also exists over the prayer for money damages. In Beller v. Middendorf, 632 F.2d 788, 797-98 & n.5 (9th Cir. 1980), we reflected upon whether sovereign immunity ever protects the Government from liability for the unconstitutional acts of its agents. As in Beller, we need not resolve the issue here. Lehner's non-monetary prayer requires us to reach the due process claim and, for the reasons given below, the claim fails. Since the outcome would be the same whether or not jurisdiction exists over the monetary prayer, we decline to decide how the doctrine of sovereign immunity might affect constitutional claims. Cf. Norton v. Matthews, 427 U.S. 524, 532, 96 S.Ct. 2771, 2775, 49 L.Ed.2d 672 (1976) (avoiding difficult jurisdictional question and reaching substantive question).
 
 
 11
 The district court also had jurisdiction over the prayer in her contract claims that the FHA return to her the property sold to the House of Affirmation. As we have explained: "The Administrative Procedures Act (APA) provides for judicial review of agency action and a waiver of sovereign immunity in an action for relief other than money damages that states a claim that a federal agency or officer failed to act as required in his official capacity. 5 U.S.C. § 702." Rowe v. United States, 633 F.2d at 801 (footnotes omitted). When coupled with the grant of jurisdiction in 28 U.S.C. § 1331, the APA paved the way for the district court to entertain her equitable prayer. Id.
 
 
 12
 Finally, the doctrine of sovereign immunity does not affect Lehner's claim against the House of Affirmation (a private corporation). We see no other barrier to jurisdiction over it.
 
 III. Failure to State a Claim
 
 13
 Although these three claims clear the jurisdictional hurdle, we uphold their dismissal under Fed.R.Civ.P. 12(b)(6). In each instance, Lehner has failed to allege facts which, if proven, would entitle her to relief. See Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957). While the district court dismissed all three for lack of jurisdiction, we may affirm its judgment on any ground squarely presented in the record.
 
 A. Due Process Claim
 
 14
 The State of California has established a procedure whereby a mortgagee can hold a foreclosure sale without judicial intervention. See Cal.Civil Code § 2924 et seq. When the Government acts as mortgagee,[3] clearly the mortgagor has a right to notice and a hearing prior to the sale. See Harris v. City of Roseburg, 664 F.2d 1121, 1125 (9th Cir. 1981) (relying on Sniadach v. Family Finance Corp. of Bay View, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), and Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972)). Because Lehner does not dispute that the procedure prescribed by California law provides minimal due process, we need not evaluate its constitutionality.[4]
 
 
 15
 Her sole challenge is to HUD's alleged failure to notify her formally of the foreclosure sale. She alleges that HUD mailed the notice to the wrong address.[5] Although we cannot determine whether her allegation is true, the record reveals clearly that she knew the foreclosure sale was imminent. Her repeated efforts to delay the impending sale attest to her knowledge. It is apparent that government officials informed her about the sale during their repeated conversations with Lehner and her lawyer. She makes no suggestion that the written notice would have supplied information not already known to her or that it would somehow facilitate judicial review of her claims, nor did she allege that she never received actual notice of the foreclosure sale. Her constitutional argument thus boils down to due process requiring the meaningless formality of written (rather than oral) notice.
 
 
 16
 We refuse to elevate form over substance. "(D)ue process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). See Cafeteria & Restaurant Workers Union, Local 473 v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961); Goichman v. Rheuban Motors, Inc., 682 F.2d 1320, 1324 (9th Cir. 1982). Similarly, the Supreme Court has "called attention to the impossibility of setting up a rigid formula as to the kind of notice that must be given; notice required will vary with circumstances and conditions." Walker v. City of Hutchinson, 352 U.S. 112, 115, 77 S.Ct. 200, 202, 1 L.Ed.2d 178 (1956). Notice should further the purposes of the requirement: "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). See Schroeder v. City of New York, 371 U.S. 208, 211, 83 S.Ct. 279, 281, 9 L.Ed.2d 255 (1962) (quoting Mullane). Lehner does not dispute that the notice given her, whether oral or written, apprised her fully of the foreclosure sale and the options available to her. We therefore find it to have been constitutionally adequate.
 
 
 17
 In other situations, written notice may best communicate the seriousness of the governmental action contemplated, facilitate judicial review of the legitimacy of the action, or accomplish some other legitimate goal. We do not decide whether written notice would then be constitutionally mandated. There is no general rule, however, requiring written rather than oral notice.
 
 B. Other Claims
 
 18
 We can quickly dispose of the two remaining matters over which the district court had jurisdiction. First, on the basis of her contract claims, Lehner seeks the return of the property sold to the House of Affirmation at the foreclosure sale. She supplies no authority or sound rationale, however, for the proposition that a breach of contract can ever justify setting aside a foreclosure sale under California law. See 3 Witkin, Summary of California Law, "Security Transactions in Real Property" §§ 109-10 (8th ed. 1973) (breach of contract not listed among the judicially-recognized reasons for overturning a foreclosure sale). We therefore hold that her equitable prayer fails as a matter of law.
 
 
 19
 The final claim is that the House of Affirmation paid an inordinately low amount for the property at the foreclosure sale and so the sale is void for lack of consideration. But Lehner alleges no fact suggesting that the House of Affirmation acted improperly; she simply says that HUD acted unfairly in setting the price. Because she offers no theory for liability absent some misconduct, her claim against the House of Affirmation must fail. To the extent that her claim is against the United States, it is barred by the doctrine of sovereign immunity.
 
 
 20
 AFFIRMED.
 
 
 
 *
 Pursuant to Rule 43(c), Samuel Riley Pierce is substituted for Patricia Harris as secretary of the Department of Housing and Urban Development
 
 
 [1]
 There is some disagreement over when the sale occurred. We assume the truth of the date alleged by Lehner
 
 
 [2]
 A plaintiff cannot avoid sovereign immunity by naming as the defendant an officer of the United States acting in an official capacity when in fact the claim is against the United States. Larson v. Domestic & Foreign Corp., 337 U.S. 682, 683-90, 69 S.Ct. 1457, 1458-61, 93 L.Ed. 1628 (1949); Hutchinson v. United States, 677 F.2d 1322, 1327 (9th Cir. 1982). The Secretary of HUD is such a nominal defendant here
 
 
 [3]
 Because the United States invoked California's nonjudicial foreclosure procedure, we need not reach the issue whether there is sufficient state action to trigger due process protections when a private person invokes it
 
 
 [4]
 While we do not pass on the issue, California courts have suggested that the procedure satisfies due process. As stated in Strutt v. Ontario Savings & Loan Ass'n, 28 Cal.App.3d 866, 877, 105 Cal.Rptr. 395, 402 (1972) (dictum):
 Under the provisions of Civil Code, section 2924, there is no immediate seizure of property nor any immediate impairment of the debtor's rights in respect to the property. He is given by the statute a minimum of 90 days in which he can refinance or sell the property or more to the point, if he disputes the facts set forth in the notice of default, or has some legal or equitable defense to foreclosure, he may within the statutory period institute an action to enjoin the sale and thereby obtain the judicial hearing contemplated by the cases cited.
 See also Hoffman v. United States Department of Housing and Urban Development, 519 F.2d 1160, 1165-66 (5th Cir. 1975) (holding that mortgagee's request that mortgagor explain his failure to repay loan satisfies due process).
 
 
 [5]
 A separate issue not properly before us is whether noncompliance with the statutory notice provisions voids the foreclosure sale under state or federal law. Lehner argues only that the failure to give written notice, whether or not required by statute, violates the fifth amendment