**GENEVA LIMITED PARTNERS, a California Limited Partnership, and Geneva Towers Associates, a California Limited Partnership, Plaintiffs,**

v.

**Jack KEMP, Secretary of Housing and Urban Development, and Joseph M. Hambin, Defendants.**

**No. C-90-2352-DLJ.**

United States District Court, N.D. California.

Aug. 27, 1990.

**1238**

Dean A. Morehous, Jr. and Theresa Helmer, Thelen, Marrin, Johnson & Bridges, San Francisco, Cal., for plaintiffs.

Anne–Christine Massullo, Asst. U.S. Atty., and Patrick Simonelli with Housing and Urban Development, San Francisco, Cal., for defendants.

## MEMORANDUM OPINION DENYING PRELIMINARY INJUNCTION MOTION AND ORDER DENYING INJUNCTION PENDING APPEAL

JENSEN, District Judge.

On August 23, 1990, this Court heard plaintiffs' motion for a preliminary injunction to enjoin foreclosure of certain real property by the Secretary of the Department of Housing and Urban Development. Dean A. Morehouse of Thelen, Marrin, Johnson & Bridges appeared on behalf of Geneva Limited Partners. Kenneth M. Levy of Levy & Levy appeared for Geneva Towers Associates. Assistant United States Attorney Anne–Christine Massullo appeared for defendants. Having reviewed the briefs submitted on behalf of the parties, the oral argument of counsel, and the applicable legal standard, the Court denies plaintiffs' motion for a preliminary injunction. The Court also denies plaintiffs' motion for an injunction pending appeal to the Ninth Circuit under Rule 62(c) of the Federal Rules of Civil Procedure.

## I. BACKGROUND

The Geneva Towers Apartments is a federally subsidized low-income housing project located in the City of San Francisco. The property consists of two large multi-unit apartment buildings, which house approximately 1750 individuals and is currently 87 percent occupied.

In 1966, the Department of Housing and Urban Development (hereinafter "HUD") insured the property pursuant to Sections 221(d)(3) and (5) of the National Housing Act, 12 U.S.C. 17151(d)(3) and (5), for the purpose of subsidizing low-income, multi-family housing. HUD holds the beneficial interest in the property under a consolidated deed of trust assigned to the Secretary in 1972. Plaintiff Geneva Limited Partners ("GLP") purchased the property in 1983 from plaintiff Geneva Towers Associates ("GTA"). Under the terms of sale, however, GTA is liable as a mortgagor under the HUD deed of trust, and also remains the record owner of the property.

In 1988 HUD became aware of several problems with the property which HUD contends created both monetary and non-monetary defaults on the property. On December 1, 1988, HUD, GTA, GLP and others entered into a Provisional Workout Agreement ("PWA") to remedy the problems. Soon thereafter, plaintiffs corrected the monetary default asserted in the PWA. Regarding the alleged non-monetary default, the PWA required plaintiffs to expeditiously correct the property's state of serious disrepair. Plaintiffs agreed to fund no less than one-third of the total cost of these repairs, with the remaining two-thirds to be paid by HUD. Plaintiffs' one-third share was to be available for use no later than September 1, 1989.

Plaintiffs did not come forward with the money as required under the PWA because HUD failed to provide a solid commitment in September regarding its two-thirds share of the funding. Under plaintiffs' interpretation of the PWA, plaintiffs' obligation to make available funding for repairs was nullified by HUD's failure to produce its share of the funding. In contrast, HUD contends that plaintiff's share of the repair costs, amounting to $2.4 million, was due and payable the first of September, 1989, regardless of HUD's actions. HUD therefore initiated foreclosure proceedings against plaintiffs shortly after the September deadline. Moreover, HUD informed plaintiffs that the absence of a monetary default (the mortgage was and remains

current) under the HUD deed of trust was "immaterial" to HUD's foreclosure decision. It is undisputed that HUD has the authority to foreclose based on a non-monetary default under the express terms of the deed of trust to the property, as well as under its own regulations for multi-family low-income housing. *See* 24 C.F.R. 207.-255(a)(2). Nevertheless, all parties agree that HUD's intention to proceed with a foreclosure in this case based on a non-monetary default is unprecedented.

The estimated total cost of the repairs required for the property has risen from roughly $3.5 million in December 1988, to the present figure of between $7 million and $8 million, although the parties disagree as to the exact amount. Plaintiffs assert that they are now prepared to make available $1 million to fund the cost of repairs.

Plaintiff GLP received a Notice of Default from HUD by letter dated July 26, 1990. The Notice asserted the existence of both a monetary and non-monetary default, and scheduled a foreclosure sale for August 28, 1990. Plaintiffs now bring suit to block HUD from foreclosing on the property until there has been a complete adjudication of the merits of their dispute.

## II. DISCUSSION

A preliminary injunction is an extraordinary remedy, to which a moving party is entitled only upon satisfaction of certain lofty and well-settled standards. The traditional test within the Ninth Circuit for issuing preliminary injunctions includes consideration of four factors:

(1) The likelihood of the plaintiffs' success on the merits;

(2) the threat of irreparable harm to the plaintiffs if the injunction is not imposed;

(3) the relative balance of this harm to the plaintiffs and the harm to the defendants if the injunction is imposed; and

(4) the public interest.

*Alaska v. Native Village of Venetie,* 856 F.2d 1384, 1388 (9th Cir.1988) (citing *Los Angeles Mem. Coliseum Comm'n v. National Football League,* 634 F.2d 1197, 1200 (9th Cir.1980)).

■ Courts within the Ninth Circuit have collapsed these factors into a two-prong test. To qualify for a preliminary injunction, "the moving party must show either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) that serious questions are raised and the balance of hardships tips sharply in the moving party's favor." *Rodeo Collection, Ltd. v. West Seventh,* 812 F.2d 1215, 1217 (9th Cir.1987) (citations omitted). These standards are not treated as two distinct tests, but rather as "the opposite ends of a single 'continuum in which the required showing of harm varies inversely with the required showing of meritoriousness.'" *Id.*

### A. Probable Success on the Merits

■ The Court first addresses the merits of plaintiffs' claims, reserving for later consideration the balance of hardships to the parties. Plaintiffs challenge the intended foreclosure by HUD on three grounds: inadequate notice to plaintiffs, abuse of the Secretary's discretion, and failure to comply with the notice, comment and rulemaking procedures of the Administrative Procedures Act ("APA").

The Court is satisfied that the notice of HUD's foreclosure action received by plaintiffs complied with the notice rules specified in the Multifamily Mortgage Foreclosure Act, 12 U.S.C. §§ 3701 *et seq.* ("MMFA"). The MMFA requires that Notice of Default and Foreclosure be provided to the "current security property owner of record." 12 U.S.C. § 3708(1)(A). The record in this case demonstrates that HUD sent by certified mail two separate notices to Eugene Burger in the final week of July 1990. One notice was mailed to Mr. Burger in his capacity as the general partner of GTA, the other in his capacity as the managing general partner of GLP. HUD thus complied with the notice requirements of 12 U.S.C. § 3708(1)(A).

Plaintiffs also argue that HUD's notice was defective under 24 CFR § 27.25(a)(2), because the notice incorrectly stated the existence of a monetary default. It is un-

disputed that a monetary default did not in fact exist at the time of service of the notice. The mere fact that the notice provided was partially incorrect, however, does not render the entire notice defective. The notice received by plaintiffs clearly presented two alternative grounds for foreclosure: monetary default, and non-monetary default based on failure to repair the property. Plaintiffs' efforts to delay the impending sale, and their arguments before this Court, clearly attest to the adequacy of the notice received. *See Lehner v. United States,* 685 F.2d 1187, 1190–91 (9th Cir. 1982).

Turning to plaintiffs' second ground for blocking the intended foreclosure, the standard governing this Court's review of the Secretary's conduct is not disputed. Judicial review of foreclosure decisions by HUD are "narrowly limited to the question whether HUD's actions were 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law....' " *United States v. Winthrop Towers,* 628 F.2d 1028, 1036 (7th Cir.1980) (quoting 5 U.S.C. § 706(2)(A)). Based on the evidence presented thus far, the Court finds that plaintiffs have failed to demonstrate an abuse of discretion by the Secretary. The deed of trust and HUD's own regulations both provide the Secretary with the authority to foreclose based on a non-monetary default. And although contested by plaintiffs, the hazardous and unsanitary living conditions at the Geneva Towers Apartments plainly support the Secretary's determination of a non-monetary default.

Weighing against these considerations in plaintiffs' argument that in reaching its decision to foreclose, HUD failed to consider that the mortgage on the Geneva Towers Apartments was current, thereby abusing its discretion by disregarding an important factor. Indeed, a HUD representative expressly stated to plaintiffs that the absence of a monetary default was "immaterial" to HUD's decision to foreclose. While such a narrow view by HUD may be ill-advised, the Court is not convinced that the Secretary has abused his discretion given his estimate of repair costs totalling $8 million for the Geneva Towers Apartments.

In addition, plaintiffs have not met their burden of demonstrating that the foreclosure in this case, based as it is on a non-monetary default, conflicts with the objectives of the National Housing Act. *See United States v. Winthrop Towers,* 628 F.2d at 1034–36; *Walker v. Pierce,* 665 F.Supp. 831, 837–38 (N.D.Cal.1987). Instead, the Court finds that the Secretary's decision in this case is consistent with the National Housing Act's goals of providing decent, safe and sanitary housing for low-income families, and therefore does not represent an abuse of the Secretary's discretion under the Administrative Procedures Act.

Finally, the Court considers plaintiffs' argument that the Secretary has violated the notice, comment and rulemaking procedures required by the APA upon implementation of a new HUD policy. Plaintiffs contend that HUD's changes in the terms and conditions of mortgage sales and the operation of public housing projects constitutes a "substantive rule" subject to the rulemaking procedures of the APA. It is difficult to deny that HUD has indeed changed its practice regarding foreclosures of public housing projects. The Secretary's intention to foreclose in the absence of a monetary default in this case is unprecedented. This change is reinforced by HUD's representation to plaintiffs in this case that the absence of a monetary default was "immaterial" to the Secretary's decision. Where in the past the Secretary has focused on whether the mortgage is current, here the Secretary is focusing exclusively on the habitability of the housing project in question.

A change in enforcement practice, however, is not necessarily tantamount to the creation of a new unwritten and unannounced "rule," as plaintiffs contend. HUD has long held the authority to foreclose based on a non-monetary default. Based on the present record, then, the Court finds that plaintiffs have not sufficiently demonstrated that HUD's reliance on a non-monetary default as the basis for foreclosure proceedings requires compli-

ance with the notice, comment and rule-making procedures mandated by the APA.

For the foregoing reasons, the Court concludes that although plaintiffs have raised arguably serious issues, they have failed to establish the probability of success on the merits of their suit, as required under the first prong of the two-prong test to obtain a preliminary injunction in the Ninth Circuit. *See Rodeo Collection, Ltd.,* 812 F.2d at 1217. Since the probability of success must be weighed against the possibility of irreparable harm, the Court next addresses this element.

On the facts of this case, it is clear that plaintiffs shall lose title to the Geneva Towers Apartments if the HUD foreclosure proceeds as scheduled on August 28, 1990. Plaintiffs contend that the loss of real property to a bona fide purchaser at foreclosure constitutes "irreparable harm" within the meaning of the standard for issuing preliminary injunctions in the Ninth Circuit.

While the Court recognizes that real property is often judicially perceived as unique, in this case plaintiffs are faced with the loss of commercial, and not residential, property. They are thus threatened with an economic loss which is compensable in large part, if not entirely, in damages. "Mere financial injury ... will not constitute irreparable harm if adequate compensatory relief will be available in the course of litigation." *Goldie's Bookstore, Inc. v. Superior Court,* 739 F.2d 466, 471 (9th Cir.1984) (citations omitted) (wherein the court declined to enjoin the loss of a commercial leasehold). The Court finds that adequate compensatory relief will be available to plaintiffs if they ultimately prevail against HUD on the merits of this litigation. Accordingly, the possibility of irreparable harm to plaintiffs is at best remote.[1]

### B. The Balance of Hardships

The second prong of the Ninth Circuit's two-prong test requires a party seeking a preliminary injunction to show "that serious questions are raised and the balance of hardships tips sharply in the moving party's favor." *Rodeo Collection,* 812 F.2d at 1217. The Court has already addressed the Secretary's alleged disregard of the absence of a monetary default in deciding to foreclose, as well as the Secretary's alleged failure to comply with applicable administrative procedures. Based on these contentions, the Court recognizes that plaintiffs have raised "serious questions" about HUD's actions in this case. The Court therefore considers the balance of hardships to the parties in permitting HUD to go forward with a foreclosure.

Plaintiffs undeniably face economic harm in losing title to the property in question. In addition, plaintiffs risk the possible loss of contractual rights under the Contract of Sale for the property, as well as statutory procedural rights which are afforded to mortgagors under the Multifamily Mortgage Foreclosure Act and HUD regulations. In terms of the hardship encountered by HUD, the Secretary clearly has a strong interest, pursuant to the National Housing Act, to provide safe and sanitary low-income housing. This interest has not been furthered by the unfortunate demise of the Geneva Towers Apartments into a state of serious disrepair.

While the Court is sympathetic to the hardship faced by plaintiffs, the primary victims in the dispute between plaintiffs and HUD are the tenants of the Geneva Towers Apartments. This Court must address the public interest in determining whether or not to issue a preliminary injunction. *See Alaska v. Native Village of Venetie,* 856 F.2d 1384, 1388–90 (9th Cir.

---

1. Plaintiffs attempt to analogize their showing of irreparable harm to that of the tenants facing eviction in the case of *Walker v. Pierce,* 665 F.Supp. 831, 843 (N.D.Cal.1987). In the opinion of the Court, the attempted comparison fails. The tenants seeking to enjoin the foreclosure in *Walker* were threatened with the loss of statutory and contractual rights related to their *resi-*

dences. The court in that case found that the tenants faced the possibility of irreparable harm, and enjoined HUD's planned foreclosure of the housing project. In contrast, plaintiffs here are threatened with the loss of statutory and contractual rights pertaining to their commercial interest in the Geneva Towers Apartments.

1988). On the record of this case, it is clear that the tenants of the Geneva Towers Apartments have endured unsafe and unsanitary living conditions since at least 1988. By failing to comply with the terms of the Provisional Workout Agreement of December 1988, plaintiffs are at least partially responsible for permitting the premises to remain in a serious state of disrepair. In the opinion of the Court, a change in the status quo, which would be achieved by HUD's planned foreclosure on the Geneva Towers Apartments, best serves the public interest.

In summary, the Court has considered the balance of hardships on both sides of the dispute. The Court further recognizes the public interest implications of the state of disrepair presently afflicting the Geneva Towers Apartments. The standard for issuing a preliminary injunction in the Ninth Circuit is clear: the balance of hardships must tip sharply or decidedly in favor of the moving party. *Alaska v. Native Village of Venetie*, 856 F.2d at 1389. In this case, the Court finds that the balance of hardships does not tip sharply in favor of the plaintiffs. The Court must therefore deny plaintiffs' request for a preliminary injunction.

## III. CONCLUSION

Faced with the extraordinary problem of the imminent loss of title to real property which they have owned for 25 years, plaintiffs have approached this Court with a request for extraordinary relief. Such relief in the form of a preliminary injunction must be based in part on the merits of plaintiffs' case, but more importantly on the balance of hardships to the parties. The Court finds that plaintiffs have not demonstrated the probability of success on the merits, and that the balance of hardships in this case does not tip sharply in favor of plaintiffs. Accordingly, plaintiffs' motion for a preliminary injunction is DENIED.

Plaintiffs also move for an injunction pending appeal to the United States Court of Appeals for the Ninth Circuit, pursuant to Rule 62(c) of the Federal Rules of Civil Procedure. Having reviewed plaintiffs' pleadings in support of the motion, as well as the pleadings filed by defendants in opposition, the Court finds that plaintiffs' motion is without merit. Specifically, the Court rejects plaintiffs' contention that they face irreparable harm if an injunction pending appeal is not granted, and, in weighing the balance of hardships, finds that defendants, as well as the tenants of the Geneva Towers Apartments, will suffer harm if the foreclosure sale does not proceed as scheduled. For these reasons, the Court DENIES plaintiffs' motion for an injunction pending appeal under Rule 62(c).

IT IS SO ORDERED.