**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

In re:  GOLD STRIKE HEIGHTS
ASSOCIATION,

Debtor,

_____

INDIAN VILLAGE ESTATES, LLC,

Plaintiff-Appellant,

v.

COMMUNITY ASSESSMENT
RECOVERY SERVICES; GARY
FARRAR, Chapter 7 Trustee,

Defendants-Appellees.

No.    19-16152

DC No. 2:18 cv-0973-JAM

MEMORANDUM<sup>*</sup>

Appeal from the United States District Court
for the Eastern District of California
John A. Mendez, District Judge, Presiding

Argued and Submitted August 12, 2020
San Francisco, California

---

\*      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Before:    TASHIMA and CHRISTEN, Circuit Judges, and BATAILLON,[**] District Judge.

Indian Village Estates (IVE) appeals from the judgment entered in favor of Community Assessment Recovery Services (CARS) and Gary Farrar, the Chapter 7 trustee for the bankruptcy estate of Gold Strike Heights Homeowners Association (Trustee). IVE's state court action against CARS and the homeowners' association was removed to bankruptcy court after the homeowners' association filed for Chapter 7 bankruptcy. The district court affirmed the bankruptcy court's judgment in favor of appellees on all of IVE's claims. We have jurisdiction under 28 U.S.C. §§ 158(d) and 1291. We affirm.

## BACKGROUND

This case presents an unusual situation in which a party alleging wrongful foreclosure is affiliated with the entity that allegedly had no authority to foreclose. IVE, the party alleging wrongful foreclosure, is an entity controlled by Mark Weiner. In 2004 and 2005, IVE purchased thirty-one of the forty-nine lots in the Gold Strike Heights Subdivision from the developer, Westwind Development Inc. As a condition of his purchase, Weiner required Westwind to appoint him and Don Lee to the board of the homeowners' association governing the subdivision, the

---

[**]    The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska, sitting by designation.

Gold Strike Heights Association (Gold Strike 1). However, after learning that Gold Strike 1 was a suspended corporation for failure to file a Statement of Information with the Secretary of State and failure to pay taxes to the Franchise Tax Board, Weiner and Lee formed a new homeowners' association in 2007. They added one word to Gold Strike 1's name and called the new homeowners' association the Gold Strike Heights Homeowners Association (Gold Strike 2). Weiner amended Gold Strike 1's Declaration of Restrictions (CC&R's) to make Gold Strike 2 the "full successor in interest" to Gold Strike 1 and to transfer "full control" of the subdivision to Gold Strike 2. Weiner knew that, because Gold Strike 1's and Gold Strike 2's names were so similar, the names were often confused and were used interchangeably on board meeting minutes and agendas, including agendas prepared by Lee.

In 2010, Weiner and Lee were ousted from the board of Gold Strike 2, leading to litigation between Gold Strike 2 and IVE, Weiner, and Lee. Pursuant to a 2011 settlement agreement, IVE agreed to allow only local residents to serve as board members in exchange for paying reduced association dues and assessments to Gold Strike 2.[1] In 2012, IVE unilaterally decided to stop paying association

---

[1] Weiner "was a developer who lived outside the area."

dues and assessments, purportedly due to Gold Strike 2's financial mismanagement.

Mike Cooper, the president of Gold Strike 2's board of directors, contacted CARS to collect the delinquent dues and assessments from IVE on Gold Strike 2's behalf. In July 2012, Gold Strike 2 entered into a contract with CARS for the latter to collect the delinquent dues and assessments and to act as trustee for nonjudicial foreclosure proceedings on the property owned by IVE.

Pursuant to California statutes governing nonjudicial foreclosures,[2] CARS sent IVE notices of intent to file a notice of delinquent assessment on IVE's property, and in March 2013, CARS filed and served thirty-one notices of delinquent assessment regarding IVE's property. The notices stated that CARS represented "Gold Strike Heights Association," and that notice was given pursuant to the CC&R's of "Gold Strike Heights Association."

Weiner wrote a letter to CARS on IVE's behalf, stating that the Gold Strike Heights Association (Gold Strike 1) no longer governed the Gold Strike Heights

---

[2] "California's nonjudicial foreclosure scheme is set forth in Civil Code §§ 2924–2924k, which 'provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust.'" *Gomes v. Countrywide Home Loans, Inc.*, 121 Cal. Rptr. 3d 819, 823 (Ct. App. 2011) (quoting *Moeller v. Lien*, 30 Cal. Rptr. 2d 777, 782 (Ct. App. 1994)).

subdivision and that the Gold Strike Heights Homeowners Association (Gold Strike 2) had taken over management of the subdivision. He challenged CARS' authority to collect money on behalf of Gold Strike 1 that was "allegedly owed to another corporate entity," Gold Strike 2. Although not acknowledged in this letter, Weiner knew that it was not Gold Strike 1 that initiated the foreclosure because he remained on the board of Gold Strike 1. Weiner also knew that IVE owed the delinquent dues and assessments to Gold Strike 2, and he never challenged the computation of the amounts past due. Nor did Weiner challenge any aspect of the foreclosure process other than the name of the homeowners' association.

The CARS representative forwarded Weiner's letter to Cooper, who said that the association's attorney advised him that the Gold Strike Heights Association and Gold Strike Heights Homeowners Association "were the same entity." CARS relied on this assurance to continue with the foreclosure process.

In October 2013, CARS filed foreclosure notices and served copies on IVE. The notices of default indicated that the lien was executed by Gold Strike 1. The notices of trustee's sale similarly indicated that Gold Strike 1 was the claimant, and the certificates of foreclosure sale indicated that Gold Strike 1 was the association/judgment creditor, Weiner and Lee wrote four more letters to CARS,

asking for the legal basis for CARS' authority to collect money on behalf of Gold Strike 1 that "allegedly" was owed to Gold Strike 2.

The foreclosure sale was conducted on September 30, 2014. Gold Strike 2 bought all thirty-one lots. In January 2015, CARS recorded the Trustee's Deeds Upon Sale, indicating that the property was conveyed to Gold Strike 2.

IVE's state court action against CARS, Gold Strike 1, and Gold Strike 2 was removed to bankruptcy court. The bankruptcy court conducted a trial and made detailed factual and credibility findings, and conclusions of law. The bankruptcy court found in favor of CARS and the Trustee and entered judgment in their favor. The court entered judgment quieting title to the thirty-one lots in favor of Gold Strike 2 and its successor bankruptcy estate. IVE appealed to the district court, which affirmed the bankruptcy court in full after a thorough review of the factual findings and legal determinations. IVE timely appealed.

## DISCUSSION

"[W]e review a bankruptcy court's decision independently and without deference to the district court's decision." *Kirkland v. Rund (In re EPD Inv. Co.)*, 821 F.3d 1146, 1149–50 (9th Cir. 2016). The bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed de novo. *Id.* at 1150.

6

IVE's wrongful foreclosure claim was based solely on the fact that the foreclosure notices listed Gold Strike 1, rather than Gold Strike 2, as the beneficiary. The bankruptcy court aptly characterized the error as a "name misidentification" rather than, as IVE contends, a matter of the wrong entity foreclosing. The cases on which IVE relies present very different circumstances from those presented here.[3]

Under California law, "'[a] nonjudicial foreclosure sale is presumed to have been conducted regularly and fairly; one attacking the sale must overcome this common law presumption "by pleading and proving an improper procedure and the resulting prejudice."' 'Prejudice is not presumed from "mere irregularities" in the process.'" *Kalnoki v. First Am. Tr. Servicing Sols., LLC*, 214 Cal. Rptr. 3d 292, 311 (Ct. App. 2017) (quoting, first, *Knapp v. Doherty*, 20 Cal. Rptr. 3d 1, 8 n.4 (Ct.

---

[3] IVE relies on *Yvanova v. New Century Mortgage Corporation*, 365 P.3d 845 (Cal. 2016), for the proposition that "[a] foreclosure initiated by one with no authority to do so is wrongful for purposes of [a wrongful foreclosure] action." *Id.* at 851. However, this begs the question of whether the foreclosing entity here had authority to do so. Moreover, *Yvanova* emphasized that its holding was narrow: "We hold only that a borrower who has suffered a nonjudicial foreclosure does not lack standing to sue for wrongful foreclosure based on an allegedly void assignment merely because he or she was in default on the loan and was not a party to the challenged assignment." *Id.* at 848. The court specifically stated that, "[i]n deciding the limited question on review, we are concerned only with prejudice in the sense of an injury sufficiently concrete and personal to provide standing, not with prejudice as a possible element of the wrongful foreclosure tort." *Id.* at 857. *Yvanova* is not relevant here.

App. 2004), then *Herrera v. Fed. Nat'l Mortg. Ass'n*, 141 Cal.Rptr.3d 326, 336 (Ct. App. 2012)).

IVE contends it has established prejudice by the fact that its properties were foreclosed upon, citing *Kalnoki* and *Sciarratta v. U.S. Bank N.A.*, 202 Cal. Rptr. 3d 219 (Ct. App. 2016), but those cases do not support IVE. *Sciarratta* held that an allegedly wrongful foreclosure was a sufficient allegation of prejudice to survive demurrer where it was also alleged that the foreclosing entity's beneficiary interest in the deed of trust was void.[4] *Id.* at 229–30.

Under *Sciarratta*, IVE's contention that it suffered a wrongful foreclosure may be a sufficient allegation to survive a demurrer (equivalent to a Rule 12(b)(6) motion to dismiss). However, IVE not only must plead, but must *prove*, that it was prejudiced. *Kalnoki*, 214 Cal. Rptr. 3d at 311. Merely being foreclosed upon is not sufficient, especially given the circumstances presented here. *Sciarratta* explained that "'[m]ere technical violations of the foreclosure process will not give rise to a tort claim; the foreclosure must have been entirely

---

[4] The complaint in *Sciarratta* alleged the assignment of the interest in the deed of trust was void, not merely voidable, because when the lender purported to assign the promissory note to Bank of America, the lender "had nothing to assign, having previously . . . assigned the promissory notes and deed of trust" to a different bank. *Sciarratta*, 202 Cal. Rptr. 3d at 228. The complaint therefore alleged that Bank of America, the foreclosing entity, had no valid interest in the deed of trust and thus no right to foreclose.

8

unauthorized on the facts of the case.'" *Sciarratta*, 202 Cal. Rptr. 3d at 226

(quoting *Miles v. Deutsche Bank Nat'l Tr. Co.*, 186 Cal. Rptr. 3d 625, 636 (Ct.

App. 2015)); *see also Knapp*, 20 Cal. Rptr. 3d at 16 (presumption that foreclosure

was conducted regularly and fairly must prevail when record lacks substantial

evidence of prejudicial procedural irregularity); *Residential Capital v. Cal-Western

Reconveyance Corp.*, 134 Cal. Rptr. 2d 162, 173 (Ct. App. 2003) (there must be "a

substantial defect in the statutory procedure that is prejudicial to the interests of the

trustor and claimants").

Nor does *Kalnoki* help IVE. There, the lender and beneficiary of the deed of

trust, Wells Fargo Home Mortgage, Inc., ceased to exist when it merged with

Wells Fargo Bank, N.A., which succeeded to the prior entity's interests. Wells

Fargo executed a substitution of trustee, which the plaintiffs challenged on the

ground that "the omission of the word 'Inc.' after the words 'Wells Fargo Home

Mortgage' from the signature block" invalidated the substitution, rendering the

subsequent foreclosure proceedings invalid. *Kalnoki*, 214 Cal. Rptr. 3d at 302.

The court disagreed, stating that the omission was "obviously a mere inadvertence

or typographical error that was not material and did not affect the validity of the

Substitution." *Id.*

9

The plaintiffs in *Kalnoki* challenged the validity of the foreclosure proceedings on numerous grounds, but the court found it "difficult to conceive" how they were prejudiced. *Id.* at 311. The court reasoned that the borrowers "do not dispute that they defaulted on their loan. They have pleaded no facts indicating that the foreclosure sale, which has already occurred, would have been averted but for the alleged deficiencies in the foreclosure process nor that the original lender would have refrained from foreclosure under the circumstances presented." *Id.* at 312.

Similarly here, IVE has never disputed that it owed Gold Strike 2 the delinquent assessments. Nor is there any evidence the foreclosure would have been averted but for the alleged deficiency in the foreclosure process, which consisted solely of the omission of the word "homeowners" in the name of the beneficiary. As in *Kalnoki*, the alleged deficiency involved the omission of one word, and there is no question that the successor entity, Gold Strike 2, had the authority to foreclose.

It is undisputed that Weiner not only knew that IVE owed the money to Gold Strike 2, but also that it was not Gold Strike 1 that was foreclosing because Weiner himself was on the board of Gold Strike 1. It also is undisputed that Weiner, having amended the CC&R's himself, knew that Gold Strike 2 was the

10

"full successor in interest" to Gold Strike 1.  Thus, the bankruptcy court's findings that IVE knew from the outset that Gold Strike 2 was the beneficiary and the foreclosing entity, as well as the findings that IVE knew it owed delinquent assessments to the beneficiary and chose not to pay them have ample support in the record.

California's extensive nonjudicial foreclosure system protects the borrower, or trustor, by informing it "of the default and the nature of the default so that the trustor has an opportunity to reinstate the secured obligation."  5 Miller & Starr, California Real Estate § 13:225 (4th ed. June 2020 update); *see also Knapp*, 20 Cal. Rptr. 3d at 8 ("The statutes provide the trustor with opportunities to prevent foreclosure by curing the default.").  IVE clearly knew of the default and the nature of the default and had the opportunity to cure the default.  Rather than taking advantage of the statutory provisions to avoid the foreclosure, IVE challenged the process on the basis of what it clearly knew was a one-word mistake.  It is "difficult to conceive" how IVE was prejudiced by the omission of the word "homeowners" in the name of the beneficiary.  *Kalnoki*, 214 Cal. Rptr. 3d at 311.

California law requires prejudicial procedural irregularity in order to invalidate a foreclosure sale.  There is no evidence that IVE was prejudiced by the name in the notices.  *See Knapp*, 20 Cal. Rptr. 3d at 14 ("the slight procedural

11

irregularity in the service of the Sale Notice" did not prejudice the borrowers where they had notice of the sale date and there was no evidence of injury); *see also Lehner v. United States*, 685 F.2d 1187, 1190–91 (9th Cir. 1982) (rejecting borrower's argument that the foreclosure was invalid because the notice was mailed to the wrong address, reasoning that "the record reveals clearly that she knew the foreclosure sale was imminent" and "refus[ing] to elevate form over substance"); *Aceves v. U.S. Bank, N.A.*, 120 Cal. Rptr. 3d 507, 519 (Ct. App. 2011) (finding no prejudice where notice of default misidentified the beneficiary because the notice accurately identified the trustee whom the borrower could contact for information about the foreclosure). Because the error in the name did not cause any prejudice to IVE, it, accordingly, did not render the foreclosure proceedings invalid.

The judgment is **AFFIRMED.**