NORTH SIDE LUMBER CO., Summit Timber Co., Stevenson Co-Ply, Inc., on behalf of themselves and all others similarly situated, Plaintiffs-Appellees,

and

Bohemia, Inc., Medford Corporation, Southwest Forest Industries, Inc., Boise Cascade Corporation, Crown Zellerbach Corporation, Georgia-Pacific Corporation, Penn Timber, Inc., Louisiana-Pacific Corporation, Publishers Paper Co., and Willamette Industries, Inc., Plaintiffs-Intervenors-Appellees,

v.

John BLOCK, Secretary of the United States Department of Agriculture; R. Max Peterson, Chief of the United States Forest Service: Jeff M. Sirmon, Regional Forester for Region VI of the United States Forest Service, Defendants-Appellants,

and

Lane County,
Defendant-Intervenor-Appellant.

NORTH SIDE LUMBER CO., Summit Timber Co., Stevenson Co-Ply, Inc., on behalf of themselves and all others similarly situated, Plaintiffs,

and

Bohemia, Inc., Medford Corporation, Southwest Forest Industries, Inc., Boise Cascade Corporation, Crown Zellerbach Corporation, Georgia-Pacific Corporation, Penn Timber, Inc., Louisiana-Pacific Corporation, Publishers Paper Co., and Willamette Industries, Inc., Plaintiffs-Intervenors-Appellants,

v.

John BLOCK, Secretary of the United States Department of Agriculture; R. Max Peterson, Chief of the United States Forest Service: Jeff M. Sirmon, Regional Forester for Region VI of the United States Forest Service, Defendants-Appellees,

and

Lane County,
Defendant-Intervenor-Appellee.

Nos. 84–3657, 84–3660, 84–3661 and 84–3776.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 15, 1984.

Decided Feb. 20, 1985.

Alan I. Saltman, Saltman & Stevens, Washington, D.C., Charles F. Adams, Phillip D. Chadsey, Stoel, Rives, Boley, Fraser & Wyse, Norman J. Wiener, Miller, Nash, Wiener, Hager & Carlsen, Wayne Hilliard, James H. Clarke, Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland, Or., for plaintiffs-appellees.

John E. Hoag, Eugne, Or., Dirk D. Snel, U.S. Dept. of Justice, Washington, D.C., for defendants-appellants.

Before FAIRCHILD *, GOODWIN and BOOCHEVER, Circuit Judges.

* The Honorable Thomas E. Fairchild, Senior United States Circuit Judge for the Seventh Circuit, sitting by designation.

GOODWIN, Circuit Judge.

The United States appeals from a preliminary injunction restraining it from enforcing contracts for the sale of national forest timber, and plaintiffs-intervenors appeal their exclusion from the benefits of the injunction. We vacate the injunction because the district court did not have jurisdiction of the cause of action on which it was based.

North Side, the class it represents, and plaintiffs-intervenors are timber companies that have contracts to cut and pay for timber in the national forests in Oregon and Washington.[1] They brought this action against the Secretary of Agriculture and several of his subordinates, asking for a judgment declaring the contracts void and restraining the defendants from enforcing them. They did not seek money damages.

Because of a depressed market for lumber and logs, the timber companies can perform their contracts only at a loss. If they do not perform, they will be liable to the government for the difference between the contract price they agreed to pay for the timber and the price the same timber brings when the government resells it to new purchasers, plus interest. Either performance at a loss or default with payment of damages to the government will bankrupt at least some of the timber companies.

The district court preliminarily enjoined the Secretary from enforcing the contracts held by North Side and the class of 109 privately-held timber companies it represents. Several publicly-held timber companies, the "plaintiffs-intervenors," were permitted to intervene in the action but were excluded from the plaintiff class and from the scope of the injunction. The Secretary and Lane County, which intervened as a defendant to protect its interest in the contracts, appeal from the district court's grant of the preliminary injunction. The plaintiffs-intervenors appeal from the dis-

1. We will refer to North Side, its co-plaintiffs, the class they represent, and plaintiffs-intervenors collectively as the timber companies.

trict court's refusal to bring them under the protection of the injunction.

The timber companies make two claims for relief. The first, which we will refer to as the impracticability claim, asserts that contingencies unforeseen at the time the contracts were made render the contracts void under the contract law doctrines of commercial impracticability, frustration of purpose, and impossibility of performance. The second, which we will refer to as the statutory claim, asserts that enforcement of the contracts would violate 16 U.S.C. §§ 473–482 and the Multiple-Use Sustained-Yield Act of 1960, 16 U.S.C. §§ 528 *et seq.*[2]

▮ The timber companies contend that both claims fall within the district court's federal question jurisdiction, 28 U.S.C. § 1331. It is true that the claims arise under federal law as § 1331 requires. The statutory claim obviously involves federal statutes. The impracticability claim also arises under federal law because federal common law of contracts applies to contracts with the federal government, *Saavedra v. Donovan*, 700 F.2d 496, 498 (9th Cir.), *cert. denied*, — U.S. —, 104 S.Ct. 236, 78 L.Ed.2d 227 (1983), and federal common law is part of the "laws ... of the United States" for the purpose of § 1331 jurisdiction. *Illinois v. Milwaukee*, 406 U.S. 91, 100, 92 S.Ct. 1385, 1391, 31 L.Ed.2d 712 (1972).

But the analysis of jurisdiction cannot stop with § 1331, because the claims in this case are in essence against the federal government, and thus are barred by sovereign immunity unless the government has consented to suit.[3] The timber companies contend that the Administrative Procedure Act, 5 U.S.C. § 702, waives the government's sovereign immunity to this action. Section 702 reads in part:

An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

The waiver of immunity is limited by the proviso of § 702 that

Nothing herein ... confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

The Tucker Act, 28 U.S.C. §§ 1346 and 1491, is a "statute that grants consent to suit" on government contracts. We conclude that it impliedly forbids relief on the impracticability claim but not the statutory claim. It thus precludes a § 702 waiver of sovereign immunity on the impracticability claim. Moreover, on the impracticability claim, we have been able to identify from the record in this case no claim of an official action or failure to act within the meaning of 5 U.S.C. § 702. In the absence of such a claim, § 702 does not waive immunity.

▮ The Tucker Act gives the United States Claims Court jurisdiction over "any claim against the United States founded ... upon any express or implied contract with the United States," 28 U.S.C. § 1491(a)(1); it exercises this jurisdiction concurrently with the district courts for actions claiming less than $10,000. 28 U.S.C. § 1346(a)(2). The Act is more than just a grant of jurisdiction over government contract claims; it is also a limited waiver of sovereign immunity and a limita-

---

**2.** North Side's original complaint asserted both the statutory and the impracticability theories. After the district court granted the preliminary injunction, North Side amended its complaint to omit the statutory claim. However, some of the plaintiffs-intervenors make this claim in their complaints in intervention.

**3.** The Supreme Court treats sovereign immunity not merely as a defense but as a jurisdictional

bar: "the existence of consent [to suit] is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983). Title 28 U.S.C. § 1331 does not itself waive sovereign immunity. *Kester v. Campbell*, 652 F.2d 13, 15 (9th Cir.1981), *cert. denied*, 454 U.S. 1146, 102 S.Ct. 1008, 71 L.Ed.2d 298 (1982).

tion on the remedies available in actions on government contracts. *Megapulse, Inc. v. Lewis,* 672 F.2d 959, 967 (D.C.Cir.1982). The Tucker Act has been construed as permitting the Claims Court to grant money damages against the government in contract actions but not injunctive or declaratory relief. *United States v. King,* 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969) (Court of Claims may not grant declaratory relief); *United States v. Jones,* 131 U.S. 1, 9 S.Ct. 669, 33 L.Ed. 90 (1889) (Court of Claims may not grant equitable relief).[4] These restrictions on the relief that the Claims Court may grant also limit the relief that the district courts may grant when exercising their concurrent Tucker Act jurisdiction under 28 U.S.C. § 1346(a)(2). *Richardson v. Morris,* 409 U.S. 464, 93 S.Ct. 629, 34 L.Ed.2d 647 (1973). Thus the Tucker Act "impliedly forbids" declaratory and injunctive relief and precludes a § 702 waiver of sovereign immunity in suits on government contracts. In fact, the legislative history of § 702 specifically mentions the Tucker Act as a statute that "impliedly forbids" relief within the meaning of § 702. H.R.Rep. No. 1656, 94th Cong., 2d Sess. 13, reprinted in 1976 U.S.Code Cong. & Ad. News 6121, 6133.

This court twice has said that the Tucker Act "does not preclude review of agency action when the relief sought is other than money damages." *Laguna Hermosa Corp. v. Martin,* 643 F.2d 1376, 1379 (9th Cir.1981); *Rowe v. United States,* 633 F.2d 799, 802 (9th Cir.1980) *cert. denied,* 451 U.S. 970, 101 S.Ct. 2047, 68 L.Ed.2d 349 (1981). Because plaintiffs do not ask for money damages, this statement might

seem to indicate that the Tucker Act does not prevent a § 702 waiver in our case. However, we decline to give the statement a broader scope than indicated by the facts of the cases in which it appears. Both *Laguna Hermosa* and *Rowe* dealt with claims that were contract-related but that rested at bottom on statutory rights. As we read these cases, the plaintiffs' reliance on statutory rights kept their claims from being "founded ... upon [a] ... contract with the United States" within the meaning of the Tucker Act, with the consequence that the Act did not preclude a § 702 waiver of sovereign immunity.[5]

In *Laguna Hermosa,* the plaintiff claimed that a government official's refusal to honor a contract that the plaintiff had entered into with the government's predecessor in interest violated a federal statute. The plaintiff asked for a declaratory judgment that it had contract rights against the government but apparently did not ask for a declaration of the content of those rights. Rather, it argued that whatever the scope of the contract rights that it had against the government's predecessor in interest, a federal statute compelled the government to recognize them.

In *Rowe,* the court understood the plaintiffs to be claiming that because they had a contract with the government, a federal statute precluded the Secretary of the Interior from awarding a lease to others. Plaintiffs accordingly asked the court to compel the Secretary to award them the lease. The *Rowe* plaintiffs were thus seeking to enforce statutory rights, not contractual ones.

---

**4.** *King* and *Jones* dealt with the jurisdiction of the former United States Court of Claims, but the cases are relevant because the Federal Courts Improvement Act of 1982, § 133, Pub.L. 97–164, 96 Stat. 25, 39, vested the newly-created Claims Court with the trial jurisdiction of the former Court of Claims. S.Rep. No. 275, 97th Cong., 1st Sess., 22–23 (1981), reprinted in 1982 U.S.Code Cong. & Ad.News 11, 32–33.

Current law permits the Claims Court to grant declaratory relief in contract claims brought before the contract is awarded, and to grant limited amounts of equitable relief, 28 U.S.C. § 1491(a)(2) & (3), but these provisions do not allow the injunction or the post-award declara-

tory judgment that plaintiffs seek in this action. *Alford v. United States,* 3 Cl.Ct. 229 (1983); *Public Service Co. v. United States,* 2 Cl.Ct. 380 (1983).

**5.** However, even invocation of a statutory right will not permit a plaintiff to escape the Tucker Act's exclusive jurisdiction and its preclusion of a § 702 waiver of sovereign immunity if the relief that the plaintiff seeks would have the actual effect of money damages. *Rowe v. United States,* 633 F.2d 799, 802 (9th Cir.1980), *cert. denied,* 451 U.S. 970, 101 S.Ct. 2047, 68 L.Ed.2d 349 (1981); *Bakersfield City School District v. Boyer,* 610 F.2d 621, 628 (9th Cir.1979).

Our reading of *Laguna Hermosa* and *Rowe* leads us to conclude that the Tucker Act does not impliedly forbid relief on the statutory claim and thus does not preclude a § 702 waiver of sovereign immunity on that claim. Like the claims in *Laguna Hermosa* and *Rowe*, the statutory claim does not seek a declaration of contract rights against the government. Rather, it asks for a declaration that, whatever the content of those rights, federal statutes preclude the government from enforcing them.

■ The impracticability claim, however, is subject to the Tucker Act's implied restrictions on relief. It is concerned solely with rights created within the contractual relationship and has nothing to do with duties arising independently of the contract. As such, the impracticability claim is "founded … upon [a] … contract with the United States" and is therefore within the Tucker Act and subject to its restrictions on relief. *See Megapulse*, 672 F.2d at 967–968. If we were to construe § 702 to waive sovereign immunity on the impracticability claim, Congress' intent not to allow post-award declaratory relief on government contracts would be frustrated. The district court does not have jurisdiction of the impracticability claim.

■ One jurisdictional point remains. The government argues that a proviso in 28 U.S.C. § 1346(a)(2) divests the district court of jurisdiction over all of plaintiffs' claims, including the statutory claims. We disagree. Section 1346(a)(2) first grants the district courts jurisdiction over any "civil action or claim against the United States" not exceeding $10,000 that is founded upon a contract with the United States. This is followed by the proviso that the district courts shall not have jurisdiction over "any civil action or claim against the United States" founded on a contract subject to the Contract Disputes Act of 1978, 41 U.S.C. §§ 601 *et seq.* The government contends that the contracts at issue in this case are subject to the Contract Disputes Act of 1978, and that the proviso, because it uses the terms "*any* civil action or claim," divests the district court of jurisdiction over all actions relating to the contracts brought under any head of jurisdiction. Because the proviso is an integral part of § 1346(a)(2), we conclude that it restricts only the jurisdiction that is granted in the first part of § 1346(a)(2). Moreover, our conclusion that the statutory claim is not subject to the Tucker Act's remedial limitations rests on the fact that the claim is not "founded upon a contract" within the meaning of § 1346(a)(2), but rather is based upon extra-contractual statutory obligations.

■ The district court has jurisdiction over the claim that enforcement of the contracts would violate 16 U.S.C. §§ 473–482 and the Multiple-Use Sustained-Yield Act of 1960, but does not have jurisdiction over the claim that the contracts are void for impracticability, frustration, or impossibility. Because the district court granted the injunction based on the impracticability claim and rejected the statutory claim, we vacate the judgment.

Because North Side's amended complaint makes only the impracticability claim, the district court on remand shall dismiss the complaint unless, in its discretion, it permits North Side to amend it. Plaintiffs-intervenors' statutory claim is remanded for further proceedings. We express no opinion on the viability of that claim.

After this case was argued and submitted, Congress enacted Public Law 98–478 which was signed by the President on October 16, 1984. This statute, popularly known as the Federal Timber Contract Payment Modification Act, substantially alters the economic environment out of which this litigation arose. We express no opinion upon whether the partial legislative remedy for some of the difficulties described in the complaint preempts judicial remedies under the pleadings as they stand, or as they may be amended upon remand.

Vacated and remanded.

BOOCHEVER, Circuit Judge, dissenting.

I respectfully dissent from the court's conclusion that the Tucker Act, 28 U.S.C. § 1346, (1982) impliedly forbids the grant-

ing of equitable relief and precludes the waiver of sovereign immunity for the claim that the Forest Service contracts were void under the doctrines of commercial impracticability, frustration of purpose and impossibility of performance.

The court's opinion is inconsistent with prior decisions of this court. In *Rowe v. United States*, 633 F.2d 799 (9th Cir.1980), *cert. denied*, 451 U.S. 970, 101 S.Ct. 2047, 68 L.Ed.2d 349 (1981), this court held that the Tucker Act does not preclude review of agency action when such relief is sought in addition to money damages. 633 F.2d at 802. The court reaffirmed this holding in *Laguna Hermosa Corp. v. Martin*, 643 F.2d 1376 (9th Cir.1981), ruling that the Tucker Act does not impliedly forbid the issuance of a declaratory judgment. 643 F.2d at 1379.

The majority attempts to distinguish *Rowe* and *Laguna Hermosa Corp.* by construing them as cases not based on contract. The cases, however, contain nothing to justify such a narrow construction; in fact contractual rights were the fulcrum of both decisions. In *Rowe*, the plaintiffs claimed that the Secretary of the Interior was contractually bound to award leases to them. 633 F.2d at 800–01. It was essential, therefore, for the court to have jurisdiction over the contractual claims. *See also* 633 F.2d at 803. In *Laguna Hermosa*, the plaintiff sought a declaratory judgment that it possessed contractual rights against the government. Although statutory rights were involved, the essence of the claim was the existence of a contract. *See* 643 F.2d at 1379. There is no suggestion in either case that jurisdiction is limited to cases involving statutory claims. Moreover, the majority neglects to mention *Lehner v. United States*, 685 F.2d 1187 (9th Cir.1982), *cert. denied*, 460 U.S. 1039, 103 S.Ct. 1431, 75 L.Ed.2d 790 (1983). Lehner sought equitable relief, inter alia, because of the government's alleged breach of contract. We relied on *Rowe* and found that the Administrative Procedure Act, 5 U.S.C. § 702 (1982) waived sovereign immunity for the equitable claim. 685 F.2d at 1190.

*Rowe, Laguna Hermosa* and *Lehner* were based on the Tucker Act before it was amended by the Contract Disputes Act of 1978, 41 U.S.C. §§ 601 *et seq.* This amendment eliminated the district courts' concurrent jurisdiction previously granted by the Tucker Act over contract claims for less than $10,000.00. The Forest Service argues that the amendment eliminated the district court's jurisdiction over all government contract claims regardless of the type of relief sought. I agree with the majority that the amendment only eliminated the district court's Tucker Act jurisdiction over contractual claims for money damages. Equitable relief jurisdiction was not affected.

Because I believe that the Tucker Act does not impliedly forbid the granting of equitable relief or preclude the waiver of sovereign immunity for claims founded on government contracts, I would hold that the district court had jurisdiction and would reach the merits of the contract claims other than for damages.