**TUCSON AIRPORT AUTHORITY and City of Tucson, Plaintiffs,**

v.

**GENERAL DYNAMICS CORPORATION, Defendant.**

**GENERAL DYNAMICS CORPORATION, Third–Party Plaintiff,**

v.

**UNITED STATES of America, William Perry, Secretary of Defense, Sheila E. Widnall, Secretary of the Air Force, Third–Party Defendants.**

No. CIV–94–355–TUC–ROS.

United States District Court, D. Arizona.

April 5, 1996.

Walter Grochowski, Junker Penfield Shiar-
as & Harrington, Phoenix, AZ, John W.
Adler, Jr., Adler Murphy & McQuillen, Chi-
cago, IL, David Alwin Paige, Anderson Kill

Olick & Oshinsky, Tucson, AZ, for Tucson Airport Authority.

Stephen Lawrence Wetherell, Tucson, AZ, Edwin F. Hendricks, Meyer Hendricks Victor Ruffner & Bivens PLC, Phoenix, AZ, Shane Ray Swindle, Dalton Gotto Samson & Kilgard PLC, Phoenix, AZ, for City of Tucson.

David Charles Anson, DeConcini McDonald Brammer, Yetwin & Lacy PC, Tucson, AZ, Herbert L. Fenster, McKenna & Cuneo, Washington, DC, for General Dynamics Corporation.

Eugene R. Bracamonte, United States Attorney, Tucson, AZ, Steven M. Talson, U.S. Department of Justice, Washington, DC, Cameron C. Powell, U.S. Department of Justice, Environmental Defense Section, Washington, DC, for William Perry, Sheila E. Widnall and U.S.

## ORDER

SILVER, District Judge.

This case arises out of the environmental enforcement and private tort actions filed in response to the discovery of groundwater contamination near the Tucson International Airport. General Dynamics Corporation ("General Dynamics"), along with other public and private entities, has been sued in a number of these actions for the costs of cleaning up the contamination and for personal injuries and/or property damages caused by the contamination.

In this case, General Dynamics filed a Third–Party Complaint against the United States, the Secretary of Defense, and the Secretary of the Air Force ("Defendants"), seeking declaratory and injunctive relief to force the government to defend General Dynamics in the pending actions, and to indemnify the company for all liabilities, costs and expenses arising from these actions. Counts I and II allege violations of the Contract Settlement Act of 1944, 41 U.S.C. §§ 101–125, and the Administrative Procedure Act, 5 U.S.C. §§ 701–706, respectively. Counts III through V alleged constitutional violations under the Public Debt Clause, the Fourteenth Amendment Due Process Clause, and the Fifth Amendment Takings Clause.

Count VI involves a claim for mandamus relief pursuant to 28 U.S.C. § 1361. Count VII alleges breach of contract. Finally, Count VIII alleges that the government is solely responsible for any cleanup costs that may be assessed against General Dynamics under CERCLA.

Defendants' Motion for Partial Judgment on the Pleadings is pending before the Court. Pursuant to Fed.R.Civ.P. 12(c), Defendants move to dismiss Counts I through VII because the United States has not waived sovereign immunity for these claims in federal district court, and because the Tucker Act vests exclusive subject matter jurisdiction over these claims in the Court of Federal Claims. Alternatively, Defendants move to dismiss all eight counts to the extent they seek injunctive relief on the ground that the United States has not waived sovereign immunity for this type of relief in district court. Defendants also move to dismiss part of Count VIII on the ground that the recovery sought is barred by the Consent Decree of June 5, 1991.

The Court has considered the parties' briefs and oral arguments. For the following reasons, Defendants' Motion for Partial Judgment on the Pleadings is granted in all respects.

### Background

In 1981, authorities discovered groundwater contamination near the Tucson International Airport. A suspected source of contamination is past industrial operations at a three-hangar facility at the airport (the so-called "Tucson Modification Center"). During World War II, Consolidated Vultee Aircraft Corporation ("Consolidated") modified aircraft for the United States Department of War at the Modification Center. General Dynamics is the successor-in-interest to Consolidated.

In particular, from February 1942 to September 1945, Consolidated modified aircraft, principally B–24 "Liberator" bombers, under a series of contracts with the United States Army Air Forces. Consolidated performed most of this work pursuant to a contract designated as W 535 ac–26999 (the "Modification Center Contract"). The contract con-

tained a "Termination Article," which set forth the respective obligations of the parties in the event of termination by the United States. This article provides:

ARTICLE 9—TERMINATION OF CONTRACT BY GOVERNMENT

. . . . .

(b) Upon termination of this contract as hereinbefore provided, full and complete settlement of all claims of the Contractor arising out of this contract shall be made as follows:

(1) The Government shall assume and become liable for all obligations, commitments and claims that the Contractor may have theretofore in good faith undertaken or incurred in connection with said work and in accordance with the provisions of this contract, and the Contractor shall, as a condition to receiving the payments mentioned in this Article, execute and deliver all such papers and take all steps as the Contracting Officer may require for the purpose of fully vesting in the Government the rights and benefits of the Contractor under such obligations and commitments.

. . . . .

(c) Upon the making of said payments all obligations of the government to make further payments or to carry out other undertakings hereunder shall cease forthwith and forever; . . . except that all rights and obligations of the respective parties in respect of costs, expenses and liabilities which may thereafter be imposed on, or incurred by, the Contractor, without its fault or neglect, which are then undetermined or incapable of determination as to either existence, validity, or amount, shall remain in full force and effect (except to the extent that responsibility therefor may have been assumed by the Government under or pursuant to the provisions of subparagraph (1) of paragraph (b) of this Article).

(Defs.' Exh. A at 14.)

On June 30, 1944, the government suspended work on the Modification Center Contract.[1] On November 9, 1945, Consolidated and the government entered into a Settlement Agreement which purported to settle the rights and responsibilities of the parties arising out of their contracts. The Settlement Agreement incorporated Article Nine of the Modification Center Contract.

In 1988, the United States Environmental Protection Agency ("EPA") notified General Dynamics that it might be a potentially responsible party ("PRP") under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607, for groundwater contamination near the Tucson airport.

In September 1990, the EPA filed a CERCLA enforcement action against several PRPs in a case captioned *United States v. Tucson Airport Authority*, No. CIV 90–587–TUC–JMR. General Dynamics was not named as a defendant. On June 5, 1991, the Court entered a Consent Decree resolving the action and implementing a remediation plan. The signatories to the Consent Decree included the EPA, Hughes Aircraft Company, McDonnell Douglas Corporation, the City of Tucson, the Tucson Airport Authority, and the United States (on behalf of the Air Force). Under the Consent Decree, the signatories are protected from future contribution actions relating to groundwater remediation in the airport area.

On September 26, 1991, the EPA notified General Dynamics that it might be a PRP under CERCLA for soil contamination near the airport. At about the same time, General Dynamics was named as a defendant in *Cordova v. Hughes Aircraft Co.*, No. CIV–284168, a tort and property action pending in Pima County Superior Court. General Dynamics has also been named as a third-party defendant in two other tort suits, *Yslava v. Hughes Aircraft Co.*, No. CIV–91–525–TUC–ROS, and *Lanier v. Hughes Aircraft Co.*, No. CIV–92–564–TUC–ROS.

On June 3, 1994, the Tucson Airport Authority filed the instant action to obtain an order requiring General Dynamics to contribute to the costs of investigation and remediation of groundwater contamination near the

---

**1.** Work continued under a new contract that is not material to the instant dispute.

Tucson airport. General Dynamics then filed its Third–Party Complaint against the United States, claiming that under the Modification Center Contract the federal government assumed any and all liabilities of Consolidated (and its successor-in-interest) arising out of performance of the contract, including all costs, expenses and claims arising out of the pending CERCLA and tort proceedings. General Dynamics seeks declaratory and injunctive relief compelling Defendants to, among other things, assume the company's defense in the underlying proceedings and to indemnify the company for any resulting liabilities. (Third–Party Compl. at 35–38.)

## Governing Legal Principles

■ In considering a motion for judgment on the pleadings, all factual allegations in the plaintiff's pleadings are taken as true and all contravening assumptions in the defendants' pleadings are taken as false. *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1550 (9th Cir.1990). Judgment on the pleadings is proper where the defendant clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law. *Id.*

## Discussion

*COUNTS I and II*

■ In Count I, General Dynamics asserts a claim under the Contract Settlement Act of 1944, 41 U.S.C. §§ 101–125. The Act established uniform procedures for the quick and equitable resolution of contractors' claims resulting from the government's termination of wartime contracts. *See* 41 U.S.C. § 101; *Monolith Portland Midwest Co. v. Reconstruction Finance Corp.,* 102 F.Supp. 951, 952 (C.D.Cal.1952). Section 103(m) prohibits the government from modifying or disregarding any final and conclusive settlement entered into under the Act: "The term 'final and conclusive,' as applied to any settlement,

finding, or decision, means that such settlement, finding, or decision shall not be reopened, annulled, modified, set aside, or disregarded by any officer, employee, or agent of the United States or in any suit, action or proceeding.. . ." 41 U.S.C. § 103(m).

■ General Dynamics alleges that the Settlement Agreement between the War Department and Consolidated is a "final and conclusive" agreement within the meaning of the Act. It further alleges that the Settlement Agreement obligates the United States to assume all costs, expenses and liabilities Consolidated (or its successor-in-interest) had incurred and might incur in connection with work under the contract. As a result, the government's failure to assume the company's defense in the underlying lawsuits constitutes a repudiation of the terms of a "final and conclusive" settlement, in violation of Section 103(m).[2]

In Count II, General Dynamics alleges that the United States' failure to defend the pending actions on behalf of General Dynamics constitutes unlawful agency action. General Dynamics argues that it is therefore entitled to an order under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702, 706(1)–(2), compelling the government to assume the company's defense.

Defendants contend that this Court lacks subject matter jurisdiction to hear Counts I and II, because the United States has not waived its sovereign immunity in federal district courts for suits of this nature.

### A. Applicable Principles of Sovereign Immunity

■ The United States, as a sovereign, is immune from suit unless it consents to be sued. *Hercules Inc. v. United States,* —— U.S. ——, ——, 116 S.Ct. 981, 985, 134 L.Ed.2d 47 (1996). A plaintiff may sue the

---

2. The Contract Settlement Act creates a private right of action for disputes arising from the government's *failure* to enter into settlement agreements. *See* 41 U.S.C. § 113; *Monolith Portland Midwest Co. v. Reconstruction Finance Corp.,* 128 F.Supp. 824, 865 (S.D.Cal.1955). However, the Act does not create a private right of action for alleged violations of Section 103(m), and this

Court has failed to locate any authority indicating that an implied private right of action exists. Accordingly, in addition to the grounds argued by Defendants, Count I of General Dynamics' Third–Party Complaint should be dismissed for failure to state a claim upon which relief can be granted.

United States only if Congress has waived sovereign immunity for the lawsuit, and a plaintiff may bring its claim in federal district court only if Congress has provided for jurisdiction there. *North Star Alaska v. United States,* 9 F.3d 1430, 1432 (9th Cir. 1993) (en banc) (per curiam) (*"North Star Alaska II"*); *Transohio Savs. Bank v. Director, Office of Thrift Supervision,* 967 F.2d 598, 606 (D.C.Cir.1992) (*"Transohio "*).[3]

■ A waiver of sovereign immunity must be clearly and unequivocally expressed by Congress in statutory text. *United States v. Nordic Village, Inc.,* 503 U.S. 30, 37, 112 S.Ct. 1011, 1016, 117 L.Ed.2d 181 (1992). Waivers are construed narrowly in favor of the government, unless Congress clearly indicates otherwise. *Id.* at 34–35, 112 S.Ct. at 1014–1015.

■ The APA waives sovereign immunity for suits seeking relief other than money damages from federal agencies or officials. 5 U.S.C. § 702; *Transohio,* 967 F.2d at 607. For claims permitted under the APA's waiver of sovereign immunity, federal district court jurisdiction may be proper under the federal question statute, 28 U.S.C. § 1331, the declaratory-judgment statute, 28 U.S.C. §§ 2201–2202, or the mandamus statute, 28 U.S.C. § 1361. *Transohio,* 967 F.2d at 607.

■ However, the APA specifically excludes from its waiver of sovereign immunity at least two types of claims: (1) claims seeking relief expressly or impliedly forbidden by another statute; and (2) claims for which an adequate remedy is available elsewhere. *Id.* Therefore, whether the APA permits district court jurisdiction over General Dynamics' claims depends on whether the company's claims fall under any of these limitations of the APA's waiver of sovereign immunity.

### 1. "Expressly or Impliedly Forbids the Relief Sought"

The APA's waiver of sovereign immunity does not extend to a claim "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. The Tucker Act, which waives sovereign immunity for claims founded upon any express or implied contract with the United States, is such a statute.

■ The Tucker Act vests in the Court of Federal Claims exclusive subject matter jurisdiction over federal contract claims exceeding $10,000. 28 U.S.C. § 1491(a)(1). It authorizes the Court of Federal Claims to award money damages, but not declaratory or injunctive relief, in contract claims against the United States. *See North Star Alaska II,* 9 F.3d at 1432 (*citing United States v. King,* 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)). The Tucker Act's restrictions on the relief that the Court of Federal Claims may award in government contract actions "impliedly forbids" federal district courts from granting the same relief. *Transohio,* 967 F.2d at 609; *North Side Lumber v. Block,* 753 F.2d 1482, 1485 (9th Cir.), *cert. denied,* 474 U.S. 919, 106 S.Ct. 248, 88 L.Ed.2d 256 (1985).[4]

■ In addition, because the Tucker Act vests exclusive subject matter jurisdiction over federal contract claims in the Court of Federal Claims, the federal courts have repeatedly held that contract-based claims against the United States can only be heard in the Court of Federal Claims. *See, e.g., North Star Alaska v. United States,* 14 F.3d 36, 37 (9th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 2706, 129 L.Ed.2d 834 (1994) (*"North Star Alaska III "*); *Transohio,* 967 F.2d at 609. Therefore, the Tucker Act not only limits the relief available in contract-based actions, but it also provides that such actions cannot be brought in the federal dis-

---

3. Waivers of sovereign immunity do not necessarily provide for jurisdiction in district court. *Transohio,* 967 F.2d at 606. The Tucker Act, for example, waives sovereign immunity for damages actions against the government, but provides for jurisdiction only in the Court of Federal Claims. *Id.;* 28 U.S.C. § 1491(a)(1).

4. The Ninth Circuit noted in *North Side Lumber Co. v. Block* that the legislative history of APA Section 702 specifically mentions the Tucker Act as a statute that "impliedly forbids" relief within the meaning of that section. 753 F.2d at 1485 (*citing* H.R.Rep. No. 1656, 94th Cong.2d Sess. 13, *reprinted in* 1976 U.S.C.A.A.N. 6121, 6133).

trict courts. In this manner as well, it is a statute that "expressly or impliedly forbids" the injunctive and declaratory relief sought by General Dynamics in this Court. 5 U.S.C. § 702. Accordingly, the APA's waiver of sovereign immunity does not apply to General Dynamics' contract claims in this Court.

■ However, the APA waives sovereign immunity for district court actions for equitable relief "resting at bottom on statutory rights." *North Star Alaska II*, 9 F.3d at 1432. Thus, a claim for injunctive relief that is based on a right conferred by a federal statute—as opposed to a right conferred by a government contract—may be heard in federal district court under the APA. *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C.Cir.1982).

■ A plaintiff may not avoid the exclusive jurisdiction of the Court of Federal Claims "merely by alleging violations of regulatory or statutory provisions rather than breach of contract." *Ingersoll–Rand Co. v. United States*, 780 F.2d 74, 77 (D.C.Cir.1985). Whether a particular action is one that "at its essence" is a contract claim, and thus subject to the Tucker Act's restrictions on relief and forum, "depends both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate)." *North Star Alaska III*, 14 F.3d at 37 (*quoting Megapulse*, 672 F.2d at 968). The critical inquiry is whether the action "sound[s] genuinely in contract [or is] based on truly independent legal grounds." *Ingersoll–Rand*, 780 F.2d at 78 (*quoting Megapulse*, 672 F.2d at 969–70).

■ In their memorandum, Defendants persuasively argue that General Dynamic's claims in Counts I and II are contract claims falling outside the APA's waiver of sovereign immunity:

> The source of the rights that General Dynamics seeks to vindicate in Counts One and Two, indisputably, is the Modification Center Contract between the Army Air Forces and Consolidated. The first and most fundamental issue that must be resolved in each claim is whether the United States *assumed in the manner General Dynamics alleges* all the liabilities, costs and expenses that the contractor (or its successor) incurred and might ever incur arising out of performance of the contract. Thus, the statutory question Count One presents—whether the United States has violated section 3(m) of the Contract Settlement Act by refusing to assume General Dynamics' defense and liabilities in the pending lawsuits—is secondary and derivative; it arises *only if* General Dynamics succeeds in proving that the United States in fact has this obligation under the terms of a "final and conclusive" settlement agreement. The same is true for Count Two: the refusal of the Air Force to assume the company's liabilities is agency action "unlawfully withheld or unreasonably delayed" only if General Dynamics first proves that the agency is obliged to do so under the terms of a "final and conclusive" settlement agreement.

(Defs.' Mem. for Partial J. on the Pleadings at 17 (emphasis added).) As this analysis makes clear, the *source* of the rights that General Dynamics seeks to enforce is the Modification Center Contract and the Settlement Agreement entered into between Consolidated and the government. The parties dispute the content of those rights; most significantly, the government disputes that the agreements impose upon it a duty to defend General Dynamics in the underlying lawsuits. Because this issue must be resolved prior to determining whether the government has violated the Contract Settlement Act, General Dynamics' claims are based "at bottom" on the contracts. *North Star Alaska II*, 9 F.3d at 1432.

The claims brought in Counts I and II are similar to those rejected by the Ninth Circuit in the *North Star Alaska* litigation. There, the plaintiff sued the Secretary of the Army for reformation of a lease under which the plaintiff leased portions of a military base. 9 F.3d at 1431. The lease cited a specific federal statute as the basis for the Secretary's authority to enter the lease. *Id.* The plaintiff subsequently sought to reform the lease to rest on different statutory authority, claiming that the statute cited in the lease was in error and that the unreformed lease violated federal law. *Id.* at 1431–32.

Although the plaintiff asked for equitable relief (reformation) based on a federal statute, the Ninth Circuit held that the claim in fact rested on the parties' contract, and thus was cognizable only in the Court of Federal Claims. 14 F.3d at 37. The court wrote: "North Star's right to have the Outlease reformed arises only if it was the original intent of the parties. Thus, North Star's right to reformation is based upon the contractual agreement itself." *Id.*

In *North Star Alaska*, the statutory issue raised by the plaintiff arose only *after* resolution of the contract issue. Similarly, the statutory issues involved here arise only after a determination of the parties' rights under their wartime contracts. *North Star Alaska* is squarely on point and requires judgment in favor of Defendants.[5]

General Dynamics argues that its claims are analogous to those presented in *Laguna Hermosa Corp. v. Martin*, 643 F.2d 1376 (9th Cir.1981). There, the plaintiff claimed that a government official's refusal to honor a contract entered into by the government's predecessor-in-interest violated a federal statute. The plaintiff sought a declaratory judgment that it had contract rights against the government, but did not ask for a declaration of the scope of those rights. Here, in contrast, General Dynamics seeks not only an order compelling the government to recognize its contract rights; it also seeks declaratory and injunctive relief that will necessarily define the scope of those rights. (Third–Party Compl. at 35–38.) *Laguna Hermosa* is accordingly distinguishable.

In addition, *North Side Lumber Co. v. Block*, 753 F.2d 1482 (9th Cir.), *cert. denied*, 474 U.S. 931, 106 S.Ct. 265, 88 L.Ed.2d 271 (1985), a case cited by both parties, does not support General Dynamics. The plaintiffs in *North Side Lumber* sought to enjoin the Secretary of Agriculture from enforcing contracts between them and the government on the grounds that (1) the contracts were void under the doctrine of commercial impracticability and (2) enforcement of the contracts would violate certain federal statutes. 753 F.2d at 1483–84.

The Ninth Circuit held that the impracticability claim was "concerned solely with rights created within the contractual relationship" and therefore was within the Tucker Act's restrictions on relief. *Id.* at 1486. The court found, however, that the APA waived sovereign immunity for the statutory claim. Unlike the impracticability claim, the statutory claim did not "seek a declaration of contract rights against the government." *Id.* "Rather, it asks for a declaration that, whatever the content of those rights, federal statutes preclude the government from enforcing them." *Id.*

■ Here, General Dynamics is not claiming (and cannot claim) that *regardless* of the Settlement Agreement between the parties, federal statutes obligate the government to assume the company's defense in the pending actions. Instead, the statutes invoked by General Dynamics are implicated if and only if the company can prove that it has certain rights under its contracts with the United States. *See Spectrum Leasing Co. v. United States*, 764 F.2d 891, 894 n. 5 (D.C.Cir.1985). General Dynamics' claims are essentially contract-based. Accordingly, they belong exclusively in the Court of Federal Claims.[6]

## 2. "Adequate Remedy"

The APA waives sovereign immunity for "final agency action for which there is no other adequate remedy in a court...." 5 U.S.C. § 704. Federal courts have held that

---

**5.** *See also Spectrum Leasing Co. v. United States*, 764 F.2d 891, 894 (D.C.Cir.1985) ("Spectrum seeks an order requiring the government to pay monies owed for computer hardware. The right to these payments is created in the first instance by the contract, not by the Debt Collection Act.")

**6.** The nature of the relief sought by General Dynamics is also revealing. In both Counts I and II, General Dynamics seeks orders compelling the government to assume liabilities allegedly owed the company in exchange for work it has done under an executory contract. General Dynamics therefore "seeks the classic contractual remedy of specific performance." *Spectrum Leasing*, 764 F.2d at 894. Any effort to obtain specific performance of a contract with the United States belongs in the Court of Federal Claims. *Wabash Valley Power Ass'n v. Rural Electrification Admin.*, 903 F.2d 445, 452 (7th Cir.1990).

the APA does not waive sovereign immunity where an adequate alternative remedy is available to remedy the challenged agency action. *See, e.g., Transohio,* 967 F.2d at 608.

■ The Tucker Act authorizes the Court of Federal Claims to award only money damages (except in narrow circumstances that do not apply in this case). *Kanemoto v. Reno,* 41 F.3d 641, 644 (Fed.Cir.1994). Money damages are frequently held to be an adequate remedy for an alleged breach of contract by a federal agency. *American Science & Eng'g Inc. v. Califano,* 571 F.2d 58, 62 (1st Cir.1978); *Warner v. Cox,* 487 F.2d 1301, 1304 (5th Cir.1974); *see also North Star Alaska III,* 14 F.3d at 38. The mere fact that the relief available in the Court of Federal Claims is not the remedy preferred by General Dynamics does not render the relief inadequate; "that the Court of Claims cannot provide the precise relief requested is no grounds for denying its jurisdiction over the claim." *American Science,* 571 F.2d at 62.

Defendants argue, and this Court agrees, that General Dynamics can obtain adequate relief in the Court of Federal Claims. An award of money damages reimbursing the company for all liabilities, expenses and costs incurred in defending the underlying lawsuits is adequate because it will provide complete relief, making the company "whole for any damage done by the government's alleged breach of contract." (Defs.' Mem. for Partial J. on the Pleadings at 23.) In addition, such relief will be adequate because it is the relief that General Dynamics has already requested: In addition to demanding that the government assume certain obligations, General Dynamics has requested the relief of monetary indemnity. (*See* Third–Party Pl. General Dynamics Corp.'s Mem. in Resp. to United States' Mot. for Partial J. on the Pleadings at 14–15 ("The government agreed either to assume or become liable ... *or to pay all costs or expenses ...*") (emphasis added).) [7]

*COUNTS III, IV and V*

As noted above, Section 702 of the APA excepts any claim from the APA's general waiver of sovereign immunity "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. The constitutional claims asserted by General Dynamics do not survive this limitation because "the Tucker Act 'implied forbids' declaratory and injunctive relief and precludes a § 702 waiver of sovereign immunity in suits on government contracts." *North Side Lumber,* 753 F.2d at 1485.

Counts III, IV and V are based on General Dynamics' alleged rights under the Modification Center Contract. Count III, which alleges a violation of the Public Debt Clause, states that "[t]he public debt clause precludes the Government from renouncing *contractual obligations* that are authorized by law and are incurred during war for the defense of the nation." (Third–Party Compl.

---

7. General Dynamics argues that *Bowen v. Massachusetts,* 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988), stands for the proposition that "money damages are not an adequate substitute for wrongful agency action." (Third–Party Pl. General Dynamics Corp.'s Mem. in Resp. to United States' Mot. for Partial J. on the Pleadings at 15.) *Bowen* held only that money damages are not always an adequate substitute for an action under the APA seeking equitable relief. *Bowen,* 487 U.S. at 904–05, 108 S.Ct. at 2737–38 ("We are not willing to assume, categorically, that a naked money judgment against the United States will always be an adequate substitute for prospective relief fashioned in the light of the rather complex ongoing relationship between the parties.").

In any event, *Bowen* is distinguishable from the present case. First, *Bowen* did not involve an effort to obtain equitable relief on a contract. The federal courts have consistently held that *Bowen* does not disturb the rule that the APA does not waive sovereign immunity for contract-based claims seeking equitable relief. *See North Star Alaska III,* 14 F.3d at 38; *Transohio,* 967 F.2d at 613; *Wabash Valley Power Ass'n,* 903 F.2d at 452; *Eagle–Picher Indus. v. United States,* 901 F.2d 1530, 1532 (10th Cir.1990); *Coggeshall Dev. Corp. v. Diamond,* 884 F.2d 1, 4–5 (1st Cir.1989).

Second, unlike the relationship between the parties in *Bowen,* the relationship between the United States and its contractor here is not an "ongoing" one. In *Bowen,* there was no foreseeable point at which the State of Massachusetts could bring a suit under the Tucker Act to obtain complete relief for monies it had paid out in expectation of reimbursement and had been denied by the government. In the present case, however, General Dynamics can obtain complete relief by waiting until the underlying lawsuits are resolved and then bringing a single suit for a specific sum of money for breach of contract under the Tucker Act.

¶ 74 (emphasis added).) Count IV, a claim under the Fourteenth Amendment's Due Process Clause, avers that "General Dynamics has a constitutionally recognized property interest in its rights under the Modification Center Contract," and that the United States has deprived General Dynamics of its property interest without due process of law by breaching its contractual obligation. (*Id.* ¶¶ 80, 81.) In Count V, General Dynamics alleges that the United States took its constitutionally-recognized property interest "in its rights under the Modification Center Contract," in violation of the Fifth Amendment. (*Id.* ¶ 86.)

■ Constitutional claims based on rights arising from government contracts are "within the Tucker Act and subject to its restrictions on relief." *North Star Alaska III*, 14 F.3d at 37. *See, e.g., Olympic Fed. Savs. & Loan Ass'n v. Director, Office of Thrift Supervision*, 1990 WL 134841, at *8 (D.D.C. 1990) (holding that due process claim alleging that regulations "repudiated" plaintiff's contract rights merely sought "to enforce plaintiff's alleged contract through an alternative legal vehicle"). Because General Dynamics' constitutional claims are based on the company's alleged rights under the Modification Center Contract, those claims belong in the Court of Federal Claims.

*COUNT VI*

In Count VI, General Dynamics seeks a writ of mandamus pursuant to 28 U.S.C. § 1361 requiring the United States to assume its alleged duty to defend General Dynamics in the pending actions. (Third–Party Compl. ¶¶ 90, 91.)

■ The Court possess broad discretion in deciding whether to exercise jurisdiction over a mandamus claim. "The decision whether to exercise jurisdiction under § 1361, even where the elements are clearly established, is within the sound discretion of the trial judge." *Bobula*, 970 F.2d at 861. The Court's discretion is broad because mandamus is an extraordinary remedy and is to be granted only in the most clear and compelling circumstances. *Schlagenhauf v. Holder*, 379 U.S. 104, 112 n. 8, 85 S.Ct. 234, 239 n. 8, 13 L.Ed.2d 152 (1964).

■ Mandamus relief is available where the plaintiff has a clear right to relief, the defendant has a clear, ministerial duty to act, and no other adequate remedy is available. *Greater Los Angeles Council on Deafness, Inc. v. Baldrige*, 827 F.2d 1353, 1362 (9th Cir.1987). However, unless a plaintiff alleges that the named federal officer has personally acted outside the scope of his or her authority, or exercised constitutionally void powers, a mandamus claim against a federal officer in his or her official capacity is in fact one against the United States, and the claim is barred unless the plaintiff identifies a clear and unequivocal waiver of sovereign immunity. *Bobula v. United States Dep't of Justice*, 970 F.2d 854, 860 (Fed.Cir.1992). As noted above, the plaintiff in this case has failed to identify a waiver of sovereign immunity applicable to the United States in federal district court.

■ A claim alleging that a federal official has acted outside the scope of his or her authority must be stated with particularity. "[A] mere allegation in the complaint that the defendant's actions were beyond any 'authority ... conferred upon him,' or that he has 'no authority,' is not sufficient." *Cavanaugh v. McKenzie*, 159 F.Supp. 555, 560 (D.Nev.1957) (citation omitted), *aff'd*, 252 F.2d 959 (9th Cir.1958). More recent cases make clear that an officer "may be said to act *ultra vires* only when he acts without any authority whatsoever." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n. 11, 104 S.Ct. 900, 908–909, 79 L.Ed.2d 67 (1984) (quotation omitted). "A simple mistake of fact or law does not necessarily mean that an officer of the government has exceeded the scope of his authority. Official action is still action of the sovereign, even if it is wrong...." *Aminoil U.S.A., Inc. v. California State Water Resources Control Bd.*, 674 F.2d 1227, 1234 (9th Cir.1982).

General Dynamics' Third–Party Complaint alleges the following:

The Government's failure to assume the defense of General Dynamics or to assist in General Dynamics' defense in connection with claims relating to alleged contamination at or near the Site ... unlawfully

reopens, annuls, modifies, sets aside, or disregards a final and conclusive settlement of a termination claim, all in violation of the Contract Settlement Act, §§ 3(m), 6(c), 58 Stat. at 650–52.

(Third–Party Compl. ¶ 67). The Complaint defines the terms "United States" and "Government" to include the Secretary of Defense and the Secretary of the Air Force. (Third–Party Compl. at 11–12.) These allegations do not establish that the named officials acted "without any authority whatsoever," or that they acted clearly beyond the scope of their delegated powers. *Pennhurst,* 465 U.S. at 101 n. 11, 104 S.Ct. at 908–909 n. 11. Instead, they merely allege that the Secretaries of Defense and of the Air Force made a mistake of law in refusing to defend General Dynamics. *See Aminoil,* 674 F.2d at 1234. Because such allegations are insufficient to state a claim against a federal official acting in his or her official capacity, General Dynamics' claim for mandamus relief must be construed as a claim against the United States. *See Bobula,* 970 F.2d at 860. Moreover, because General Dynamics has failed to identify a waiver of sovereign immunity applicable to the United States in this Court, the mandamus claim is barred.

In addition, Count VI is inadequate because General Dynamics has failed to allege that the named federal officials have a "clear" duty to act. *See Davis Assoc., Inc. v. Secretary of HUD,* 498 F.2d 385, 388 (1st Cir.1974) ("In mandamus actions, the usually separate questions of jurisdiction and failure-to-state-a-claim merge. There can be no mandamus jurisdiction if no 'duty' exists on the part of the defendants."). Among other things, mandamus relief is only available to compel a federal officer to perform a duty if the alleged duty is so plainly described as to be free from doubt. *Fallini v. Hodel,* 783 F.2d 1343, 1345 (9th Cir.1986).

Here, General Dynamics has failed to identify a statutory duty to defend. That duty, to the extent that it exists at all, is contained only in the Modification Center Contract. "Where a suit against an officer of the United States government seeks to compel the officer in his official capacity to perform a contractual duty not otherwise required by

... a statute ... it is a suit against the office," or the sovereign. *Bobula,* 970 F.2d at 860. Congress has not consented to suits ordering specific performance of alleged contractual obligations by the United States. *See Coggeshall Dev. Corp. v. Diamond,* 884 F.2d 1, 3 (1st Cir.1989); *Sharp v. Weinberger,* 798 F.2d 1521, 1524 (D.C.Cir.1986); *Dean v. Herrington,* 668 F.Supp. 646, 655–56 (E.D.Tenn.1987) (dismissing mandamus claim where the only specific duty arose from the terms of a contract). Therefore, General Dynamics' mandamus claim is improperly plead and barred by the doctrine of sovereign immunity.

*COUNT VII*

Count VII alleges breach of contract. General Dynamics asserts that this Court has supplemental jurisdiction over Count VII pursuant to 28 U.S.C. § 1367. It cites *Far West Fed. Bank, S.B. v. Director, Office of Thrift Supervision,* 930 F.2d 883, 891 (Fed. Cir.1991), for the proposition that a federal district court may exercise pendent jurisdiction over a claim that the government asserts is controlled by the Tucker Act.

*Far West* does not support the proposition for which it is cited. In *Far West,* an insolvent bank was restructured under the authority of two federal agencies—the Federal Home Loan Bank Board (FHLBB) and the Federal Savings and Loan Insurance Corporation (FSLIC). These agencies agreed in contracts with the bank to forbearance of certain regulatory requirements. 930 F.2d at 885–86. After passage of the Financial Institutions Reform, Recovery and Enforcement Act (FIRREA), Pub.L. 101–73, the newly-created Office of Thrift Supervision (which assumed the functions of the FHLBB) required all banks to operate according to FIRREA's requirements, regardless of prior agreements that had been reached with the FHLBB. *Id.* at 886. The bank then sued the Director of the Office of Thrift Supervision and the FDIC in federal district court, stating, among other things, an action for recession of the contracts with the federal agencies and restitution of invested funds. *Id.* at 886–87. The government sought to sever this contract-based claim, arguing that the Tucker Act invested the Court of Federal

Claims with exclusive jurisdiction over the claim. *Id.* at 887.

The Federal Circuit affirmed the district court's denial of the government's motion to sever. The appellate court construed the "subject to suit" clause of the Office of Thrift Supervision's charter as a consent to suit in the federal district courts for claims other than money damages. *Id.* at 890–92. The court recognized that the strong Congressional policy (embodied in the doctrine of pendent jurisdiction) disfavoring multiplication of litigation supported a broad construction of the "subject to suit" clause. *Id.* at 891–92. In light of this policy and other important considerations, the court held that the charter's "subject to suit" clause constituted a waiver of sovereign immunity to suit in federal district court. *Id.* at 892.

The *Far West* court did not hold, as General Dynamics suggests, that federal district courts may exercise pendent jurisdiction over contract-based claims otherwise belonging in the Court of Federal Claims. Instead, the court held that a contract-based claim may be brought in federal district court against a federal agency where the agency's own charter waived sovereign immunity for such a claim. In the present case, General Dynamics had not identified a similar waiver of sovereign immunity. Accordingly, *Far West* is inapposite.

 Federal courts have consistently held that the Court of Federal Claims' exclusive jurisdiction over Tucker Act claims is not overridden by supplemental jurisdiction. *See, e.g., Dia Navigation Co., Ltd. v. Pomeroy,* 34 F.3d 1255, 1267 (3d Cir.1994); *Pershing Division of Donaldson, Lufkin & Jenrette Securities Corp. v. United States,* 22 F.3d 741, 744 (7th Cir.1994) (citing cases). *Far West* does not disturb this general rule. Accordingly, this Court lacks supplement jurisdiction over the breach of contract claim asserted in Count VII.

*COUNT VIII*

Count VIII seeks a declaratory judgment to determine "that any liabilities for remediation and abatement arising out of Consolidated's activities at the Modification Center,

pursuant to Sections 107 and 113(f) of CERCLA, should be wholly apportioned to the United States...." (Third–Party Compl. ¶ 102.) To the extent that this claim seeks contribution for groundwater remediation costs, it is barred by the Consent Decree entered in *United States v. Tucson Airport Authority,* No. CIV 90–587–TUC–JMR. The Consent Decree grants the present Defendants contribution protection pursuant to 42 U.S.C. § 9613(f)(2) for any future claims relating to groundwater remediation at or near the Tucson International Airport. (*See* Consent Decree Contribution Protection provision, *quoted in* Defs.' Mem. for Partial J. on the Pleadings at 37.)

 General Dynamics argues that contribution protection "neither allows nor was intended to allow the federal government to protect one of its own agencies from private party claims." (Third–Party Pl. General Dynamics Corporations' Resp. to United States' Mot. for Partial J. on the Pleadings at 28.) This argument is contradicted by the plain language of CERCLA, which provides that contribution protection extends to settlements with government agencies. CERCLA Section 113(f)(2) states that "persons" who resolve their liability with the government are protected from contribution claims. 42 U.S.C. § 9613(f)(2). The term "person" as defined by CERCLA expressly includes the United States. 42 U.S.C. § 9601(21).

General Dynamics cites *United States v. Moore,* 703 F.Supp. 455, 459 (E.D.Va.1988), in support of its argument. In *Moore,* the court held that an administrative settlement implemented without any opportunity for outside scrutiny, either through administrative procedures or by a court entering the settlement as a consent decree, did not give rise to contribution protection. 703 F.Supp. at 459.

 *Moore* is distinguishable. Unlike the settlement in *Moore,* the settlement here was approved and entered by the Court as a Consent Decree. Judicial settlements must be reviewed for fairness, reasonableness, and consistency with the Constitution and the mandate of Congress. *City of New York v. Exxon,* 697 F.Supp. 677, 692 (S.D.N.Y.1988). Because the Consent Decree was entered

after judicial review, the decree's contribution protection provision has the full force of law. Therefore, General Dynamics' CERCLA contribution claim is barred.

Accordingly,

**IT IS ORDERED** granting the United States' Motion for Partial Judgment on the Pleadings on Counts I–VII and on Count VIII as specifically set forth above (Document No. 46).